**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED

2007 JUN 27 P 3: 29

| | |
|---|---|
| **BRUNICE PATTERSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **AUTO-OWNERS INSURANCE** | ) |
| **COMPANY, a foreign corporation,** | ) |
| **BILL REAVES, an individual,** | ) |
| **and Fictitious Defendants A-Z,** | ) |
| | ) |
| **Defendants.** | ) |

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

CIVIL ACTION NO.: 2 07cv596 ID

## NOTICE OF REMOVAL OF CIVIL ACTION

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, Defendant, Auto-Owners Insurance Company (Auto-Owners) hereby gives notice of removal of this action from the Circuit Court of Covington County, Alabama, to the United States District Court for the Middle District of Alabama, Northern Division.  As grounds for this removal, Defendant Auto-Owners states as follows:

1.      On or about May 30, 2007 Plaintiff, Brunice Patterson (hereinafter referred to as "Patterson") commenced the action styled <u>Brunice Patterson v.  Auto-Owners Insurance Company, Inc., a foreign corporation, Bill Reaves, an individual and fictitious Defendants A-Z</u>, Civil Action No.: CV-07-90019.00 in the Circuit Court of Covington County, Alabama.

2.      True and correct copies of all process, pleadings and orders filed in the Circuit Court of Covington County, Alabama in CV-07-90019.00 are attached hereto as Exhibit "1" and made a part hereof in accordance with 28 U.S.C. §1446(a).

3.      In her complaint, Plaintiff, Brunice Patterson, alleges causes of action for breach of contract (Count One) and bad faith (Count Two).  The original complaint alleges that Defendant Auto-Owners is a foreign corporation.  The original complaint also alleges that Defendant Bill Reaves is an individual who, upon information and belief, resides in Montgomery, Alabama.  As demonstrated below, Defendant Reaves has been fraudulently joined; therefore, his citizenship is not considered for purposes of determining whether diversity jurisdiction exists, and Defendant Reaves' consent to removal is not necessary. See, Clay v. Brown & Williamson Tobacco Corp., 77 F. Supp. 2d 1220, 1223, n. 3 (M.D. Ala. 1999) (consent of alleged fraudulently joined defendant not required).  At this time Defendant Reaves has not been properly served. Nonetheless, Defendant Reaves has consented to this notice of removal as evidenced by Defendant Reaves' Notice of Consent to Removal, a copy of which is attached as Exhibit "2".

4.      Defendant Auto-Owners is a mutual insurance company incorporated and organized under the laws of the State of Michigan, having its principal place of business in the State of Michigan.  Auto-Owners is not incorporated or organized in the State of Alabama and does not have its principal place of business in the State of Alabama.  Auto-Owners is authorized to do business in the State of Alabama.

5.      Service of process on Defendant Auto-Owners Insurance Company of the summons and complaint by certified mail was purportedly made on June 4, 2007. See, Exhibit "1" at p. 5.  Service of Process on Defendant Bill Reaves of the summons and complaint by certified mail was purportedly made on June 4, 2007.   See, id.  Both Defendant Auto-Owners and Defendant Reaves first received a copy of the initial pleading setting forth the claims for relief by purported service by certified mail of the summons and

2

complaint on June 4, 2007.

6.      Pursuant to 28 U.S.C. §1446(b) Defendants have thirty days from the receipt

by the Defendant, through service or otherwise, of the initial pleading setting forth the claim

for relief upon which such action or proceeding is based, to remove a case.  28 U.S.C.

§1446(b).  This notice of removal is filed within thirty days after purported service on

Defendants Auto-Owners and Reaves on June 4, 2007, and within thirty days after

Defendants Auto-Owners and Reaves first received Plaintiff's complaint on June 4, 2007,

and within thirty days of the filing of Plaintiff's complaint; therefore, this removal is timely

filed pursuant to 28 U.S.C. §1446(b) and Rule 6(a) of the *Federal Rules of Civil Procedure*.

7.      Defendant Auto Owners and Defendant Reaves are the only Defendants

named in the lawsuit; therefore, all named Defendants have consented to this notice of

removal. Plaintiff has also named numerous fictitious Defendants in the complaint. For

purposes of removal, the citizenship of Defendants sued under fictitious names shall be

disregarded.  28 U.S.C. §1441(a).

8.      In accordance with 28 U.S.C. §1446(b), a copy of this notice of removal is

being filed with the clerk of the Circuit Court of Covington County, Alabama.  A copy of the

notice of filing of notice of removal is attached hereto as Exhibit "3".

9.      This action is hereby removed by Defendants from the Circuit Court of

Covington County, Alabama, to the United States District Court for the Middle District of

Alabama, Northern Division, as the district court of the United States for the district and

division embracing the place where such action was pending.  See, 28 U.S.C. §81(b)(1)

and 28 U.S.C. §1446(a).  Thus, venue is proper in the United States District Court for the

Middle District of Alabama, Northern Division.

## FEDERAL DIVERSITY JURISDICTION

## COMPLETE DIVERSITY

10.    The sole Plaintiff in this action, Plaintiff, Brunice Patterson, is a resident citizen of Covington County, Alabama. See, Complaint at ¶ 1.

11.    Defendant Auto-Owners is a mutual insurance company incorporated and organized under the laws of the State of Michigan, having its principal place of business in the State of Michigan.  Auto-Owners is not incorporated or organized in the State of Alabama and does not have its principal place of business in the State of Alabama.  Auto-Owners is authorized to do business in the State of Alabama.  Thus, Defendant Auto-Owners is for diversity purposes a resident citizen of the State of Michigan.  Therefore, there is complete diversity between Plaintiff and Defendant Auto-Owners Insurance Company.

12.    Defendant, Bill Reaves, is an employee of Auto-Owners Insurance Company, and at the time Plaintiff's complaint and this notice of removal was filed, is a resident citizen of the State of Alabama.  As demonstrated below, the citizenship and residency of Defendant Reaves, however, is not considered for purposes of determining whether diversity jurisdiction exists, as Defendant Reaves has been fraudulently joined.

13.    Plaintiff's fraudulent joinder of Defendant Bill Reaves is conclusively demonstrated by the allegations of Plaintiff's complaint.  Said complaint alleges that the Plaintiff is "an insured of the Defendant Auto-Owners". See, Complaint at ¶ 4.  A certified copy of the subject Auto-Owners Insurance Company Homeowners Insurance Policy is attached as Exhibit "4" and conclusively demonstrates that Bill Reaves is not a party to the

4

insurance contract. Plaintiff's complaint further alleges that Defendant Bill Reaves conducted investigation into the Plaintiff's claim and was acting "as Auto-Owners' agent, servant and employee." Under Alabama law, all claims concerning contract, breach of contract, bad faith failure to pay, or bad faith failure to investigate are claims that can only be asserted against the insurance company. See, Simmons v. Congress Life Insurance Company, 791 So. 2d 360 (Ala. 1998); see also, Cleavland v. Fidelity & Guaranty Life Ins. Co., 2005 WL 3115282 at *3 (M.D. Ala. 2005) ("Even assuming that Plaintiff is able to establish the existence of a life insurance contract with defendant Fidelity & Guaranty, there is no possibility that she can state a valid bad faith or breach of contract claim against Defendant [agent] under Alabama law."). As the only claims in Plaintiff's action are a breach of contract (Count One) and bad faith claim (Count Two), Plaintiff's complaint fails to state a cause of action against Defendant Reaves; therefore, Defendant Reaves has been fraudulently joined. See, Cleaveland, supra, at *3. See also, Owens v. Life Ins. Co. of Georgia, 289 F. Supp. 2d 1319, 1324 (M.D. Ala. 2003).

14.    The term fraudulent joinder is actually a misnomer because the doctrine does not require proof of fraud. Rather, to establish a joinder as fraudulent, the removing party must demonstrate that the allegations of the complaint state "no possible cause of action against [the resident] defendant ... under the allegations of the Plaintiffs' pleadings at the time of removal" Cabalceta v. Standard Fruit Co., 883 F. 2d 1553, 1562 (11th Cir. 1989). In the Eleventh Circuit, as elsewhere, courts considering whether complete diversity exists ignore the presence of fraudulently joined defendants – defendants, in other words, against whom relief is not seriously sought. See, e.g., Tapscott v. M.S. Dealer Service Corp., 77 F. 3rd 1353, 1359 (11th Cir. 1996); Cabalceta v. Standard Fruit Co., 883 F. 2d 1553 (11th

Cir. 1989).  The fraudulent joinder doctrine is a judicially created doctrine that provides exceptions to the requirement of complete diversity.  Triggs v. John Crump Toyota, Inc. 154 F. 3d 1284, 1287 (11th Cir. 1998).

15.     Under Alabama law it is clear that none of the causes of action asserted by Patterson can be maintained against Defendant Bill Reaves.  First of all, Reaves is not a party to the insurance contract; therefore, a breach of contract claim and bad faith claim cannot be maintained against Bill Reaves.   All claims concerning contract, breach of contract,  bad faith failure to pay, or bad faith failure to investigate are claims that can only be asserted against the insurance company.  See, Simmons v. Congress Life Ins. Co., 791 So. 2d 360 (Ala. 1998).  Thus, such relief cannot be obtained or seriously sought from Defendant Bill Reaves; therefore, he has been fraudulently joined.  See, Cleaveland, supra at *3 ("Defendant has met its burden of establishing that [the agent] was fraudulently joined and the claims against the agent are due to be dismissed on that basis.").  Further, all claims against fictitious defendants are disregarded for purposes of determining diversity jurisdiction.  See, 28 U.S.C. §1441(a).

16.     As stated above, Plaintiff has also named numerous fictitious defendants in its complaint; however, for purposes of removal, the citizenship of defendants sued under fictitious names shall be disregarded pursuant to 28 U.S.C. §1441(a).  Therefore, there is complete diversity between Plaintiff and the only properly joined Defendant pursuant to 28 U.S.C. §1332(a)(1).

## AMOUNT IN CONTROVERSY

17.     The amount in controversy in this case exceeds the sum of $75,000.00,

6

exclusive of interest and costs, and this case meets the amount in controversy requirements for diversity jurisdiction purposes under 28 U.S.C. §1332(a) because the value of the relief Plaintiff seeks exceeds $75,000.00 exclusive of interest and costs. In Plaintiff's complaint, Plaintiff seeks compensatory damages and punitive damages. See, Complaint at ¶10 and ¶13. Where, as here, Plaintiff seeks recovery for an indeterminate amount, diversity jurisdiction exists where a removing Defendant establishes by a preponderance of evidence that the amount in controversy exceeds $75,000.00. See, e.g., Leonard v. Enterprise Rent a Car, 279 F. 3d 967, 972 (11th Cir. 2002). In this case, it is clear that the amount in controversy may reasonably exceed the jurisdictional minimum and there are no statutory caps of less than $75,000.00 on the compensatory and punitive damages which Plaintiff seeks to recover. Plaintiff's complaint alleges breach of contract with regard to the non-payment of accidental death benefits under an Auto-Owners insurance policy. Auto-Owners' Homeowners Insurance Policy contains an accidental death benefit coverage of $20,000.00 subject to the terms, conditions, exclusions and limitations contained in the policy. A certified copy of the Auto-Owners Homeowners Insurance Policy, including declaration pages of the subject policy, is attached as Exhibit "4". Thus, Plaintiff seeks compensatory damages of at least $20,000.00, plus interest and costs. See Complaint at ¶10.

18.    Any potential award of punitive damages is also included in determining the amount in controversy if punitive damages are recoverable under governing law. See, Bell v. Preferred Life Assur. Society of Montgomery, Ala., 320 U.S. 238, 240, 64 S. Ct. 5 (1943); Holley Equipment Co., v. Credit Alliance Corp., 821 F. 2d 1531, 1535 (11th Cir. 1987), Swafford v. Transit Cas. Co., 486 F. Supp. 175, 177 (N.D. Ga. 1980). Punitive

7

damages are potentially recoverable under Alabama law in an action for bad faith. <u>See</u>, <u>Gulf Atlantic Life Ins. Co. v. Barnes</u>, 405 So. 2d 916, 925 (Ala. 1981)("Because the violation of the duty of good faith and fair dealing is tortious in nature, punitive damages as well as compensatory damages are recoverable in the proper case."). Alabama law only caps punitive damages awards against companies such as Auto-Owners Insurance Company at the greater of $500,000.00 or three times the compensatory damages. <u>See</u>, §6-11-21, <u>Code of Alabama</u>, 1975. An award of the alleged compensatory damages (i.e. the death benefit of $20,000.00) and punitive damages of less than three times the alleged compensatory damages would exceed the jurisdictional minium. Plaintiff's complaint contains a general unspecified demand of compensatory and punitive damages, and it is probable that Plaintiff is attempting to claim other unspecified incidental and consequential damages such as damages for mental anguish. As stated above, when a plaintiff fails to plead a specific amount of damages, the removing defendant must only prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.00 exclusive of interest and costs. <u>Tapscott v. M.S. Dealer Service Corp.</u>, 77 F. 3d 1353, 1357 (11th Cir. 1996).

19.    Plaintiff in this action has alleged she is entitled to punitive damages by demanding such in her complaint. <u>See</u>, Complaint at <u>ad damnum</u> Count Two. Under Alabama law Plaintiff may recover punitive damages only where the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff. <u>See</u>, APJI, 11.03. Plaintiff is the master of her pleadings and could have specifically pled an amount below the jurisdictional minimum; however, she did not. Plaintiff's allegation that Plaintiff is entitled to unspecified compensatory and punitive

8

damages, plaintiff's failure to plead an amount below the jurisdictional minimum, and applicable Alabama statutory law demonstrating the amount of punitive damages plaintiff could obtain in this action, establish by a preponderance of the evidence that the amount in controversy exceeds this court's jurisdictional minimum, even without consideration of a possible award of damages for mental anguish.

20.    A survey of Alabama cases involving alleged bad faith and/or fraud reveals verdicts far in excess of $75,000.00. See, e.g., National Ins. Ass'n v. Sockwell, 829 So. 2d 111 (Ala. 2002)(punitive damages award of $600,000 and $201,000 awarded for compensatory damages, including mental anguish, in bad faith case affirmed by Alabama Supreme Court); Sperau v. Ford Motor Co., 674 So. 2d 24 (Ala. 1995), vacated on other grounds, 517 U.S. 1217 (1996)(aff'd on same grounds, 708 So. 2d 111 (Ala. 1997), cert. den'd, 118 S. Ct. 1519 (1998)(remitting verdicts for two plaintiffs to $200,000 and $500,000 respectively in fraud case); First Commercial Bank v. Spivey, 694 So. 2d 1316 (Ala. 1997) (upholding $500,000 compensatory award consisting primarily of mental anguish); Duckhead Apparel Co. v. Hoots, 659 So. 2d 897 (Ala. 1995)(upholding awards for mental anguish of $2 million, $1 million and $500,000 for three plaintiffs); Land & Assocs. v. Simmons, 562 So. 2d 140 (Ala. 1989)(remitted to $600,000 in fraud case); American Pioneer Life Ins. Co. v. Sandlin, 470 So. 2d 657 (Ala. 1985)($3,000,000 in a fraud case).

21.    In this particular case, the Plaintiff alleges Defendants are guilty of breach of contract and bad faith based upon Defendant's failure to pay death benefits to Plaintiff. Plaintiff alleges the denial and breach was "without debatable reason for doing so" and "without first conducting an adequate investigation into the claim". See, Complaint at ¶ 13. In a similar case in Principal Financial Group v. Thomas, 585 So. 2d 816 (Ala. 1991), the

9

Alabama Supreme Court affirmed an award of $1,000.00 compensatory damages on Plaintiff's breach of contract claim and $750,000.00 punitive damages regarding a $1,000.00 dependent death benefit. Like this case, the insurer in <u>Thomas</u> claimed there was a question whether the death benefit was payable. In both this case and the <u>Thomas</u> case, the insurer determined the deceased would not be eligible. <u>See</u>, <u>Thomas v. Principal Financial Group</u>, 566 So. 2d 735, 737 (Ala. 1990), aff'd after remand, 585 So. 2d 816 (Ala. 1991). In both this case and the <u>Thomas</u> case the Plaintiff's attorney requested the insurer to reconsider the denial. <u>See</u>, 566 So. 2d at 737. In both this case and <u>Thomas</u>, the Plaintiff alleged bad faith failure to investigate. <u>See</u>, Complaint at ¶ 13; <u>see also</u>, 566 So. 2d at 746 ("after carefully reviewing the record, we conclude that this case is not the 'normal' or 'ordinary' case to which the 'directed verdict' on the contract claim 'standard is applicable"). The facts and evidence set forth above, including the <u>Thomas</u> case involving identical causes of action on a death benefit twenty times less than the death benefit alleged payable in this action, and affirming a judgment for ten times this court's jurisdictional minimum, demonstrates by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional minium. <u>See</u>, <u>Tapscott v. Ms. Dealer Service Corp.</u>, 77 F. 3d 1353, 1357 (11th Cir. 1996). Defendant, therefore, asserts that Defendant has met its burden of setting forth sufficient summary judgment type evidence, including specific facts and/or evidence of this case and factually or legally similar cases, proving by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs. <u>See also</u>, <u>Local American Life Ins. Co. v. Mattiace</u>, 679 So. 2d 229 (Ala. 1996) (per cariam) (award of $32,200.00 death benefits on breach of contract claim, plus $25,000.00

10

compensatory damages for mental anguish and $75,000.00 punitive damages on bad faith claim affirmed). Defendant denies that Plaintiff is entitled to a punitive damage award and further denies a large punitive damage award could be sustained in this case under current law. Nonetheless, an award of compensatory damages and punitive damages of three times the compensatory award [i.e., 20,000 + 60,000 (20,000 x 3) = $80,000] could be sustained and exceeds the jurisdictional minimum. See, §6-11-21, Code of Alabama, 1975; see also, Coosada Trucking Co., Inc. v.CIT Financial USA, 132 Fed Appx. 816 (11th Cir 2005) (affirming district court's reduction of punitive damages to a punitive to compensatory ratio of 4 to 1).

22.    Under the pleadings and the facts before the Court, it is clear that the amount in controversy in this action is in excess of $75,000.00, exclusive of interest and costs. Defendant Auto-Owners adopts by reference as if fully set forth herein the entire contents of its Answer filed contemporaneously with this notice.

23.    There is complete diversity of citizenship between the properly joined parties, and this Court has original jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. §1332.

24.    Because complete diversity of citizenship exists between the Plaintiff and the only properly joined Defendant Auto-Owners, and because the requisite amount in controversy is present, this civil action may be removed to this Court pursuant to 28 U.S.C. § 1441.

25.    That the pending action is one which may be removed to this Court, and this Notice of Removal is filed pursuant to 28 U.S.C. §§ 1441 and 1446 within thirty days after receipt and service of Plaintiff's complaint.

11

26. Defendant Auto-Owners by virtue of filing this Notice of Removal does not waive any defenses or objections available to Defendant under law.

27. A copy of this notice of removal is being served upon all counsel of record.

28. A true and correct copy of this notice of removal is being filed with the Circuit Court of Covington County, Alabama. A copy of the notice of filing of notice of removal being filed with the Circuit Court of Covington County, Alabama is attached hereto as Exhibit "3".

29. A copy of all pleadings served upon the Defendants has been attached to the original notice of removal. <u>See</u>, Exhibit "1".

**WHEREFORE**, Defendant, Auto-Owners Insurance Company, files this notice of removal so as to effect the removal of this action from the Circuit Court of Covington County, Alabama, to this Court. Defendant prays this Honorable Court will make such other orders as may be appropriate to effect the preparation and filing of a true record in this cause so that all proceedings that may have been had in said Circuit Court are removed to this Court. Defendant, Auto-Owners Insurance Company further prays that the removal of this cause to this Court should be effected and that no further or other proceedings shall be had with respect to this cause in the Circuit Court of Covington County, Alabama.

Dated this the 27th day of June , 2007.

12

Respectfully submitted,

_____
ROGER S. MORROW (MOR032)

_____
JOEL H. PEARSON (PEA019)
ATTORNEYS FOR DEFENDANT
AUTO-OWNERS INSURANCE COMPANY

OF COUNSEL:

MORROW, ROMINE & PEARSON, P.C.
P.O. Box 4804
Montgomery, AL 36103-4804
Telephone:  (334) 262-7707
Facsimile:   (334) 262-7742

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon the following by placing a copy of same in the United States mail, first class postage prepaid on this the 27th day of June _____, 2007.

Hon.  Thomas B.  Albritton
Albrittons, Clifton, Alverson,
Moody & Bowden, P.C.
P.O. Box 880
Andalusia, AL 36420

_____
OF COUNSEL

13

# EXHIBIT "1"

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93    Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT - CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number:<br>23-CV-200<br>Date of Filing:<br>05/30/2007 | ELECTRONICALLY FILED<br>5/30/2007 4:29 PM<br>CV-2007-900019.00<br>CIRCUIT COURT OF<br>COVINGTON COUNTY, ALABAMA<br>ROGER POWELL, CLERK |

## GENERAL INFORMATION

### IN THE CIRCUIT OF COVINGTON COUNTY, ALABAMA
### BRUNICE PATTERSON v. AUTO OWNERS INSURANCE COMPANY ET AL

**First Plaintiff:** ☐ Business  ☑ Individual  ☐ Government  ☐ Other

**First Defendant:** ☑ Business  ☐ Individual  ☐ Government  ☐ Other

## NATURE OF SUIT:

**TORTS: PERSONAL INJURY**

☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonnes
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☑ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**

☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**

☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**

☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP-Contempt of Court
☐ CONT-Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND- Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
☐ CVUD-Eviction Appeal/Unlawfyul Detainer
☐ FORJ-Foreign Judgment
☐ FORF-Fruits of Crime Forfeiture
☐ MSHC-Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB-Protection From Abuse
☐ FELA-Railroad/Seaman (FELA)
☐ RPRO-Real Property
☐ WTEG-Will/Trust/Estate/Guardianship/Conservatorship
☐ COMP-Workers' Compensation
☐ CVXX-Miscellaneous Circuit Civil Case

**ORIGIN:**  F ☑ INITIAL FILING   A ☐ APPEAL FROM DISTRICT COURT   O ☐ OTHER

R ☐ REMANDED   T ☐ TRANSFERRED FROM OTHER CIRCUIT COURT   _____

**HAS JURY TRIAL BEEN DEMANDED?**   ☑ Yes  ☐ No

**RELIEF REQUESTED:**   ☑ MONETARY AWARD REQUESTED   ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**  ALB009      5/30/2007 4:27:40 PM      /s THOMAS ALBRITTON

**MEDIATION REQUESTED:**   ☐ Yes  ☑ No  ☐ Undecided

I, Roger A. Powell, Circuit Clerk
hereby certify this is a true and
correct copy on file in this office.

Roger A. Powell, Circuit Clerk

)                                              )

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | SUMMONS<br>- CIVIL - | Case Number:<br>23-CV-2007-900019.00 |
|---|---|---|

### IN THE CIVIL COURT OF COVINGTON, ALABAMA
### BRUNICE PATTERSON v. AUTO OWNERS INSURANCE COMPANY

**NOTICE TO**  AUTO OWNERS INSURANCE COMPANY, P.O. BOX 244017, MONTGOMERY AL, 36124

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY THOMAS ALBRITTON

WHOSE ADDRESS IS P.O. BOX 880, ANDALUSIA AL, 36420

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of     BRUNICE PATTERSON
   pursuant to the Alabama Rules of the Civil Procedure

| 5/30/2007 4:29:57 PM | /s ROGER POWELL | ds |
|---|---|---|
| Date | Clerk/Register | By |

| ☑ Certified mail is hereby requested | /s THOMAS ALBRITTON |
|---|---|
|  | Plaintiffs's/Attorney's Signature |

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____

_____

Date                    Server's Signature

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee<br>(Endorsement Required) | |
| Restricted Delivery Fee<br>(Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

7004 0750 0000 2101 1057

Sent To   CV·07·9·19
Street, Apt. No.;   Auto Owners
or PO Box No.
City, State, ZIP+4

PS Form 3800, June 2002          See Reverse for Instructions

)                                   )

| State of Alabama<br>Unified Judicial System<br><br>Form C-34   Rev 6/88 | **SUMMONS**<br>**- CIVIL -** | **Case Number:**<br>23-CV-2007-900019.00 |
|---|---|---|

### IN THE CIVIL COURT OF COVINGTON, ALABAMA
### BRUNICE PATTERSON v. AUTO OWNERS INSURANCE COMPANY

**NOTICE TO**  BILL REAVES, P.O. BOX 244017, MONTGOMERY AL, 36124

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS. YOU OR YOUR ATTORNEY ARE REQUIRED TO FILE THE ORIGINAL OF YOUR WRITTEN ANSWER, EITHER ADMITTING OR DENYING EACH ALLEGATION IN THE COMPLAINT WITH THE CLERK OF THIS COURT. A COPY OF YOUR ANSWER MUST BE MAILED OR HAND DELIVERED BY YOU OR YOUR ATTORNEY TO THE OPPOSING PARTY'S ATTORNEY THOMAS ALBRITTON

WHOSE ADDRESS IS P.O. BOX 880, ANDALUSIA AL, 36420

THE ANSWER MUST BE MAILED WITHIN 30 DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.

TO ANY SHERIFF OR ANY PERSONNEL AUTHORIZED by the Alabama Rules of the Civil Procedure:

☐ You are hereby commanded to serve this summons and a copy of the complaint in this action upon the defendant

☑ Service by certified mail of this summons is initiated upon the written request of    BRUNICE PATTERSON
   pursuant to the Alabama Rules of the Civil Procedure

| 5/30/2007 4:29:57 PM | /s ROGER POWELL | *ds* |
|---|---|---|
| Date | Clerk/Register | By |

☑ Certified mail is hereby requested    /s THOMAS ALBRITTON

Plaintiff's/Attorney's Signature

RETURN ON SERVICE:

☐ Return receipt of certified mail received in this office on _____

☐ I certify that I personally delivered a copy of the Summons and Complaint to _____

_____ in _____ County, Alabama on _____

_____                    _____

Date                                Server's Signature

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee<br>(Endorsement Required) | |
| Restricted Delivery Fee<br>(Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To   CV-07-9-19
Street, Apt. No.;
or PO Box No.   Bill Reaves
City, State, ZIP+4

PS Form 3800, June 2002              See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Bill Reaves
PO Box 244017
Montgomery, Al
36124

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
x L. Dawkins    ☐ Agent
                ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
L. Dawkins    6/4/07

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☒ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☒ Yes

2. Article Number
(Transfer from service label)    7004 0750 0000 2101 1064

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Auto Owners Ins Co
PO Box 244017
Montgomery, Al
36124

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
x L. Dawkins    ☒ Agent
                ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
L. Dawkins    6/4/07

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☒ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7004 0750 0000 2101 1057

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

)

ELECTRONICALLY FILED
5/30/2007 4:29 PM
CV-2007-900019.00
CIRCUIT COURT OF
COVINGTON COUNTY, ALABAMA
ROGER POWELL, CLERK

## IN THE CIRCUIT COURT OF COVINGTON COUNTY, ALABAMA

| | |
|---|---|
| **BRUNICE PATTERSON, an** ) <br> **individual,** ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> **vs.** ) <br> ) <br> **AUTO-OWNERS INSURANCE** ) <br> **COMPANY, a foreign corporation,** ) <br> **BILL REAVES, an individual,** ) <br> **and FICTITIOUS DEFENDANTS** ) <br> **A-Z, those persons, firms or** ) <br> **corporations who are unknown at** ) <br> **this time, but who will be added** ) <br> **by amendment when ascertained,** ) <br> ) <br>     **Defendants.** ) | **CV-07-_____** |

### COMPLAINT

    1.    The Plaintiff is an individual residing in Opp, Covington County, Alabama at all times relevant hereto.

    2.    The Defendant Auto-Owners is a foreign corporation doing business by agent in Covington County, Alabama at all times relevant hereto.

    3.    The Defendant Bill Reaves is an individual who, upon information and belief, resides in Montgomery, Alabama.

    4.    The Plaintiff is currently an insured of the defendant Auto-Owners, and is an "eligible person" under the "Accidental Death Benefits" provision of her Homeowners' Insurance Policy with the Defendants.

    5.    On or about November 29, 2006 the Plaintiff's husband died from injuries he sustained after being gored by a bull.

    6.    The Defendant Bill Reaves conducted all investigations into the Plaintiff's claims on

behalf of the Defendant, Auto-Owners, and was acting, at all times relevant hereto, as Auto-Owners' agent, servant and employee.

7.    In April 2007, the Plaintiff made a request for the accidental benefits she is due under her policy of insurance with the Defendants, but the Defendants denied her these benefits.

## COUNT ONE–BREACH OF CONTRACT

8.    The Plaintiff incorporates by reference, and realleges as if fully set out herein, all previous allegations.

9.    At all times relevant hereto, the Defendants, including fictitious defendants A-Z, and the Plaintiff had a policy of insurance which provided for the payment of accidental death benefits in the event of a death as contemplated in the policy.

10.    The Defendants, either individually or by and through their agents, servants and employees, have breached this contract they had with the Plaintiff in that they have denied her these contractual benefits, proximately causing her damages.

WHEREFORE, for the above reasons, the Plaintiff demands judgment against the Defendants for compensatory damages, as well as interest and costs of this action.

## COUNT TWO–BAD FAITH

11.    The Plaintiff incorporates by reference, and realleges as if fully set out herein, all previous allegations.

12.    At all times relevant hereto, the Defendants, including fictitious defendants A-Z, and the Plaintiff had a policy of insurance which provided for the payment of accidental death benefits in the event of a death as contemplated in the policy.

13.    The Defendants, in bad faith and either individually or by and through their agents, servants and employees, breached this contract they had with the Plaintiff, without a debatable

reason for doing so, and without first conducting an adequate investigation into the claim,

proximately causing the Plaintiff damages.

WHEREFORE, for the above reasons, the Plaintiff demands judgment against the

Defendants for compensatory damages, as well as interest, costs of this action, and punitive

damages.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES IN THIS CAUSE.

/s/Thomas B. Albritton
Thomas B. Albritton
Attorney for Plaintiff

OF COUNSEL:
ALBRITTONS, CLIFTON, ALVERSON
MOODY & BOWDEN, P.C.
P.O. Box 880
Andalusia, AL 36420
(334)-222-3177
(334)-222-2696

Please serve the defendants via certified mail as follows:

Auto-Owners Insurance Company
c/o Drew Klasing
5915 Carmichael Road
Montgomery, Alabama 36117-2518

Bill Reaves
P.O. Box 244017
Montgomery, AL 36124-4017

/s/Thomas B. Albritton
OF COUNSEL

# EXHIBIT "2"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

BRUNICE PATTERSON,         )
                               )

       Plaintiff,          )
                               )       CIVIL ACTION NO.: 2:07CV596 - ID

v.                       )
                               )

AUTO-OWNERS INSURANCE     )
COMPANY, a foreign corporation,   )
BILL REAVES, an individual,     )
and Fictitious Defendants A-Z,    )
                               )

       Defendants.       )

## NOTICE OF CONSENT TO REMOVAL OF DEFENDANT
## BILL REAVES

     **COMES NOW** Defendant, Bill Reaves, a resident citizen of the State of Alabama,

by and through the undersigned counsel, and although unnecessary based upon the

fraudulent joinder of said Defendant, hereby files this notice of consent to removal

expressly consenting to the removal of this action styled <u>Brunice Patterson v. Auto-Owners</u>

<u>Insurance Company, et al.</u>, Case No.: 07-900019.00, from the Circuit Court of Covington

County, Alabama, to the United States District Court for the Middle District of Alabama,

Northern Division, pursuant to 28 U.S.C. §§1332, 1441,and 1446.  By filing this notice of

consent to removal this Defendant reserves all rights and defenses of Defendant with

respect to lack of personal jurisdiction and/or insufficiency of process and/or insufficiency

of service of process and does not otherwise voluntarily submit to the jurisdiction of this

court or of any other court without proper process and/or service of process.

     Dated this the 27th day of _July_, 2007.

Respectfully submitted,

_____
ROGER S. MORROW (MOR032)

_____
JOEL H. PEARSON (PEA019)
**ATTORNEYS FOR DEFENDANT**
**Bill REAVES**

**OF COUNSEL:**

**MORROW, ROMINE & PEARSON, P.C.**
**P.O. Box 4804**
**Montgomery, AL 36103-4804**
**Telephone:  (334) 262-7707**
**Facsimile:   (334) 262-7742**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon the following by placing a copy of same in the United States mail, first class postage prepaid on this the 27th day of June_____, 2007.

Hon.  Thomas B.  Albritton
Albrittons, Clifton, Alverson,
Moody & Bowden, P.C.
P.O. Box 880
Andalusia, AL 36420

_____
OF COUNSEL

# EXHIBIT "3"

# IN THE CIRCUIT COURT OF
## COVINGTON COUNTY, ALABAMA

| | | |
|---|---|---|
| **BRUNICE PATTERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  CV-2007-900019.00** |
| | ) | |
| **AUTO-OWNERS INSURANCE** | ) | |
| **COMPANY, a foreign corporation,** | ) | |
| **BILL REAVES, an individual,** | ) | |
| **and Fictitious Defendants A-Z,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## NOTICE OF FILING OF NOTICE OF REMOVAL

**TO:**

Mr. Roger A. Powell
Covington County Courthouse
1-K N. Court Square
Andalusia, Alabama  36420-3995

Please take notice that Defendant, Auto-Owners  Insurance Company has on this date filed its  Notice of Removal, a true and correct copy of which is attached hereto as Exhibit "A", in the Office of the Clerk of the United States District Court for the Middle District of Alabama, Northern Division at Montgomery, Alabama.

Dated this the _27th_ day of _June_ 2007.

Respectfully submitted,

_Roger S. Morrow_
**ROGER S. MORROW (MOR032)**

JOEL H. PEARSON (PEA019)
ATTORNEYS FOR DEFENDANT
AUTO-OWNERS INSURANCE COMPANY


OF COUNSEL:

MORROW, ROMINE & PEARSON, P.C.
P.O. Box 4804
Montgomery, AL 36103-4804
Telephone:  (334) 262-7707
Facsimile:  (334) 262-7742


## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the following by electronic transmission and by placing a copy of the same in the United States mail, first class postage prepaid on this the _27th_ day of _June_____, 2007.

    Hon.  Thomas B.  Albritton
    Albrittons, Clifton, Alverson,
    Moody & Bowden, P.C.
    P.O. Box 880
    Andalusia, AL 36420



OF COUNSEL

# EXHIBIT  "4"

# *Auto-Owners*

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

Issued 01-24-2006

**HOMEOWNERS POLICY DECLARATIONS**

Renewal Effective 03-01-2006

AGENCY THE SERVICE AGENCY INC
17-0168-00     Mkt Terr 041     (334) 493-3555

**POLICY NUMBER     42-153-809-01**

Company Use          38-89-AL-0003

INSURED GEORGE PATTERSON

ADDRESS 503 FAIRVIEW AVE
OPP  AL  36467-1715

Agency
Bill

| POLICY TERM | |
|---|---|
| 12:01 a.m. | 12:01 a.m. |
| to | |
| 03-01-2006 | 03-01-2007 |

---

# FOR COMPANY/AGENCY USE ONLY

ATTACHED FORMS MUST BE VIEWED IN MOBIUS APPS SUITE.

The following attachments were issued with this transaction:

| 17903 | (02-96) | 17360 | (03-97)A | 17618 | (02-96)A | 17662 | (02-96)A | 17780 | (05-03) |
|---|---|---|---|---|---|---|---|---|---|
| 16016 | (09-00)B | 17386 | (02-96) | 17444 | (04-04)A | 17381 | (02-96) | 17761 | (06-05) |
| 17447 | (03-97) | 59325 | (07-04)A | 17886 | (06-05) | | | | |

Premium/Commission Recap:
      $1,153.11  a  22.5%

Billing Type                    Agency Bill

Insured Copy Mailed To          Insured

Trailback Date                  01-24-2006
   USER-ID                      RENL

Previous Policy Number    04 17-0168-00 009517-38093708

Reinsurance Dec Copy            No

AGENCY **17-0168-00**    POLICY    **42-153-809-01**

13563 (8-03)

THE SERVICE AGENCY INC
PO BOX 887
OPP  AL  36467-0887

01-24-2006



P.O. BOX 30660, LANSING, MICHIGAN 48909-8160  •  517-323-1200
AUTO-OWNERS INSURANCE COMPANY
AUTO-OWNERS LIFE INSURANCE COMPANY
HOME-OWNERS INSURANCE COMPANY
OWNERS INSURANCE COMPANY
PROPERTY-OWNERS INSURANCE COMPANY
SOUTHERN-OWNERS INSURANCE COMPANY

GEORGE PATTERSON
503 FAIRVIEW AVE
OPP  AL  36467-1715

### AN IMPORTANT MESSAGE FOR YOU

Thank you for selecting Auto-Owners Insurance Group to serve your insurance needs!  Your policy comes with an agent.  Feel free to contact your independent Auto-Owners agent with questions you may have about your insurance needs.  Your agency's phone number is **(334) 493-3555**.

Enclosed is your policy Declarations.  **Please review your policy carefully to be sure that the policy accurately shows the coverages you have selected and contact your agent if you need to update your coverages.**

Please take this opportunity to review your insurance needs with your Auto-Owners agent.  Auto-Owners and its affiliate companies offer a variety of programs.  Each program has its own eligibility requirements, coverages and rates.  You should discuss with your agent which company and program are most appropriate for your insurance needs.

Auto-Owners Insurance Group wants to write all of your eligible insurance coverages, and we are pleased to offer generous **Multi-Policy Discounts** when you place your automobile, home, life insurance, annuities, disability income or long term care insurance with us.

Auto-Owners Insurance Company was formed in 1916 and now the Auto-Owners Insurance Group comprises five property and casualty companies and a life insurance company.  Auto-Owners Insurance Group property and casualty companies enjoy the highest possible ratings assigned by nationally recognized rating authorities.

# *Homeowners Insurance Policy*

*Auto-Owners Insurance Company*

**POLICY NON-ASSESSABLE**
This policy is non-assessable and the premium stated in the Declarations is the only premium you will be asked to pay.

**PARTICIPATING**
You will be entitled to an equitable participation in Company funds in excess of the amount required to pay expenses and all the losses or claims or other policy obligations incurred, together with the reserve and surplus funds required or permitted by law. A distribution will be made only in accordance with the decision of our Board of Directors acting under the insurance laws and under our charter.

## NOTICE OF MEMBERSHIP AND ANNUAL MEETING

Because we are a mutual company this policy makes you a member of the Auto-Owners Insurance Company. You are entitled to vote, in person or by proxy, at all meetings. Our annual policyholder's meetings are held at our home office at Lansing, Michigan on the second Monday in May in each year at 10:00 A.M.

In witness whereof, we, the Auto-Owners Insurance Company, have caused this policy to be issued and to be duly signed by our President and Secretary.

Secretary

President

17386 (2-96)

# *Auto-Owners*

Page 1

17560 (09-90)
Issued 01-24-2006

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**HOMEOWNERS POLICY DECLARATIONS**

Renewal Effective 03-01-2006

AGENCY **THE SERVICE AGENCY INC**
17-0168-00    Mkt Terr 041    (334) 493-3555

INSURED **GEORGE PATTERSON**

ADDRESS **503 FAIRVIEW AVE**
**OPP    AL    36467-1715**

**POLICY NUMBER    42-153-809-01**

Company Use    38-89-AL-0003

| Agency Bill | POLICY TERM | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | to | |
| | 03-01-2006 | 03-01-2007 |

In consideration of payment of the premium shown below, this policy is renewed. Please attach this Declarations and attachments to your policy. If you have any questions, please consult with your agent.

| | TERM |
|---|---|
| TOTAL POLICY PREMIUM INCLUDING PERSONAL ARTICLES | $1,153.11 |

## LOCATION 001

### HOMEOWNERS POLICY FORM 3

Location:  503 FAIRVIEW AVE OPP AL 36467-1715

**PROPERTY AND PERSONAL LIABILITY PROTECTION COVERAGES**     LIMITS     PREMIUM

| | | LIMITS | PREMIUM |
|---|---|---|---|
| A | Dwelling | $161,000 | $2,115.00 |
| B | Other Structures | 32,200 | Included |
| C | Personal Property | 112,700 | Included |
| D | Additional Living Expense and Loss of Rents | 48,300 | Included |
| E | Personal Liability (each occurrence) | 100,000 | Included |
| F | Medical Payments (each person) | 1,000 | Included |

**PREMIUM ADJUSTMENTS THAT APPLY**

Section I Deductible  $1,000 - All Perils
Multi-Policy Discount
Mature Homeowner Discount - Policy Term Age 82
Deadbolt Locks Discount
Fire Extinguisher Discount
Smoke Detector Discount
  TOTAL PREMIUM ADJUSTMENTS                        $1,419.33-

**ADDITIONAL COVERAGES THAT APPLY**

| | | |
|---|---|---|
| Personal Property Replacement Cost | | $233.00 |
| Guaranteed Home Replacement Cost | | 85.00 |
| Accidental Death Benefit | $20,000 | Included |
| Credit and Fund Transfer Card Coverage | 1,000 | Included |
| Loss Assessment Coverage | 2,500 | Included |
| Fire Department Charges | 500 | Included |

**RATING INFORMATION**

Adjusted Value Factor:  1.045
Construction:  Masonry Veneer
Families:  1
Territory:  76
Occupancy:  Primary
Year Built:  1967

Rated Protection Class:  5
Hydrant:  Within 1,000 Feet
Fire Dept:  Within 5 Miles
Location:  Inside City Limits
Responding Fire Dept:
  OPP
No Solid Fuel Heating and No Fireplace

100% Rates Apply
County:  20
  Covington
City:  2350

**FORMS THAT APPLY TO THIS LOCATION:** 17903  (02-96)    17360  (03-97)    17618  (02-96)
17662  (02-96)

**SECURED INTERESTED PARTIES:**    None

LOCATION 001    $1,013.67

*I certify that this policy was assembled from available records as a representation of coverage that was in effect for the policy period shown.*

*Kassandra Campbell*

Date _____

AUTO-OWNERS INS. CO.                          **Page 2**                              17560 (09-90)
                                                                                Issued 01-24-2006

AGENCY THE SERVICE AGENCY INC                              Agency   **POLICY NUMBER**    **42-153-809-01**
       17-0168-00      Mkt Terr 041                       Bill     Company Use          **38-89-AL-0003**

INSURED GEORGE PATTERSON                                            Term 03-01-2006 to 03-01-2007

**FORMS THAT APPLY TO ALL LOCATIONS:**   17780   (05-03)     17386   (02-96)     17444   (04-04)
17381  (02-96)    17761  (06-05)     17447   (03-97)     16000   (04-81)


Countersigned By: _____

# *Auto-Owners*

Page 3

16000 (04-81)
Issued 01-24-2006

INSURANCE COMPANY
6101 ANACAPRI BLVD., LANSING, MI 48917-3999

**PERSONAL ARTICLES DECLARATIONS**

Renewal Effective 03-01-2006

AGENCY THE SERVICE AGENCY INC
17-0168-00      Mkt Terr 041  (334) 493-3555

**POLICY NUMBER     42-153-809-01**

INSURED GEORGE PATTERSON

Company Use          38-89-AL-0003

ADDRESS 503 FAIRVIEW AVE
OPP  AL  36467-1715

| Agency Bill | POLICY TERM | |
|---|---|---|
| | 12:01 a.m. | 12:01 a.m. |
| | | to |
| | 03-01-2006 | 03-01-2007 |

In consideration of payment of the premium shown below, this policy is renewed.  Please attach this Declarations and attachments to your policy. If you have any questions, please consult with your agent.

## LOCATION 001

Location:  503 FAIRVIEW AVE OPP AL 36467-1715
County:  20  Covington

| ITEM | PROPERTY DESCRIPTION | RATING FACTOR | DED | AMOUNT | PREMIUM |
|---|---|---|---|---|---|
| **JEWELRY CLASS** | | | | | |
| 001 | LDS OVAL BRIL CUT DIAM 2.04CT CERTIFIED BY EGL. SI1 & G COLOR. 2312438023 | | $500 | $22,950 | $139.44 |
| | Forms that apply to this class:  16016  (09-00) | | | | |
| | JL CLASS TOTAL | | | $22,950 | $139.44 |

| TOTAL PERSONAL ARTICLES PREMIUM | TERM $139.44 |
|---|---|

A single deductible applies per claim.  If more than one item is involved in a claim, the single highest applicable deductible amount is used.
Multi-Policy Discount Applies
Mature Homeowners Discount Applies

# PERSONAL ARTICLES FLOATER ENDORSEMENT

16016 (9-00)

For an additional premium we cover the personal property for which an amount of insurance is shown on the Declarations or Schedule forming part of this policy. This insurance is subject to the provisions of this endorsement and the compatible provisions of the policy to which it is attached.

## NEWLY ACQUIRED PROPERTY

This clause applies only to jewelry, furs, collectibles, cameras and musical instruments covered under this form:

We cover newly acquired property for an amount not to exceed the lesser of:

    a.   25% of the amount of insurance for its class; or
    b.   $10,000;

if:

    a.   you report to us within 30 days of acquiring it; and
    b.   pay the premium on it from the date acquired.

## PERILS INSURED AGAINST

We insure against all risks of physical loss except:

1. Loss caused by:

    a.   wear and tear, gradual deterioration;
    b.   insects or vermin;
    c.   inherent vice;
    d.   nuclear action, meaning nuclear reaction, radiation, radioactive contamination however caused and whether controlled or uncontrolled, or any consequence of any of these. Nuclear action includes the discharge of a nuclear weapon even if accidental. Direct loss by fire which results from nuclear action is covered;
    e.   war (declared or undeclared) civil war, insurrection, rebellion or revolution; or

    f.   an action committed by you or at your direction with the intent to cause loss or damage.

2. As to **Fine Arts** and **Collectibles**:

    a.   damage caused by any repairing, restoration or retouching process;
    b.   breakage of art glass windows, statuary, marble, glassware, bric-a-brac, porcelains and similar fragile articles unless caused by:
       (1)  fire or lightning;
       (2)  aircraft;
       (3)  theft or attempted theft;
       (4)  cyclone, tornado, windstorm;
       (5)  earthquake, flood;
       (6)  malicious damage; or
       (7)  collision, derailment or overturn of conveyance;
       except as we may state otherwise; or
    c.   loss to property on exhibition at fair grounds or on the premises of any national or international exposition. We do cover at exhibitions or premises which may be described in the policy.

3. As to **Postage Stamps** or **Rare and Current Coin Collections**:

    a.   fading, creasing, denting, scratching, tearing, thinning, transfer of colors, inherent defect, dampness, extremes of temperature, gradual depreciation, or damage sustained from handling or while being actually worked upon;
    b.   mysterious disappearance of individual stamps, coins or other articles insured unless:

       (1)  specifically scheduled for a definite amount; or
       (2)  not specifically scheduled but mounted in a volume and the page to which attached is also lost;

c. loss of or damage to property in the custody of transportation companies; shipments by mail unless by registered mail;

d. theft from any unattended automobile except while being shipped by registered mail; or

e. loss of or damage to any property described which is not an actual part of a stamp, money or numismatic collection.

4. As to **Miscellaneous Property**:

a. breakage, marring, scratching, tearing or denting unless by perils listed in 2.b. above;

b. loss caused by infidelity of your employees or persons to whom the insured property is entrusted;

c. loss or damage due to any process of refinishing, renovating or repairing;

d. loss or damage due to dampness of the atmosphere or extremes of temperatures; or

e. rust, fouling or explosion of firearms.

## SPECIAL CONDITIONS

1. **Fine Arts:** We will pay no more than the amount shown in the Schedule for each article, which we agree is the value of the article.

   In the event of the total loss of an article which is part of a set, we will pay the full value of the set. You agree to surrender the remaining article or articles of the set to us.

   You agree the property will be packed and unpacked by competent packers.

   We cover other art you acquire during the policy period for its actual cash value but not more than 25% of the amount of insurance. You must report it to us within 90 days of the date acquired and pay the additional premium.

2. **Jewelry - Agreed Value:** When a jewelry article is specifically described and shown in the Declarations or Schedule as Agreed Value:

a. we agree that the amount shown in the Declarations or Schedule is the value of each jewelry article so designated; and

b. we will pay no more than the amount shown in the Declarations or Schedule for such article.

   In the event of the total loss of a jewelry article, which is part of a set, we will pay the full value of the set. You agree to surrender the remaining article or articles of the set to us.

3. **Golfer's Equipment:** We cover golf clubs, golf clothing and golf equipment. We cover your other clothing in a locker while you are playing. Golf balls are covered for loss by fire and, if there are visible marks of forcible entry into the building, room or locker, by burglary.

4. **Musical Instruments:** You agree not to play these instruments for pay unless an additional premium is paid.

5. **Silverware:** We do not cover pens, pencils, flasks, smoking equipment or jewelry.

6. **Postage Stamps** or **Rare and Current Coins:** Under **Postage Stamps**, we cover:

a. due, envelope, official, revenue, match and medicine stamps;

b. covers, locals, reprints, essays, proofs;

c. other philatelic property, including books, pages and mountings;

which you own or have in your custody or control.

Under **Rare and Current Coins**, we cover:

a. medals, paper money, bank notes, tokens of money;

b. other numismatic property, including coin albums, containers, frames, cards and display cabinets;

which you own or have in your custody or control.

As to stamp or coin collection not specifically described, we will pay the market value at the time of loss but not more than:

a. $1000 on numismatic property; nor

b. $250 on any one stamp, coin or individual article or any one pair, strip, block, series, sheet, cover, frame or card; nor

c. that proportion of any loss that the total sum insured bears to the market value of the property insured.

7. **Valuation**: We will not pay more than the least of:

a. the actual cash value of the property at the time any loss or damage occurs. Actual cash value may include a deduction for depreciation;

b. the cost to repair or replace the damaged property with like kind and quality; or

c. the amount of insurance stated for the class of property.

This condition does not apply to **Fine Arts** or to **Jewelry-Agreed Value**.

8. **Loss Clause:** The amount of insurance under this endorsement will not be reduced except for total loss of a specifically scheduled item. Any unearned premium that applies to such item will be refunded to you or applied to the premium due on item(s) replacing those on which the claim was paid.

9. **Pair or Set:** In case of loss of or damage to property specifically described in the Schedule or Declarations as a pair or set, we may repair or replace any part of the pair or set to restore it to its value before the loss, or we may pay the difference between the actual cash value of the property before and after the loss. This condition does not apply to **Fine Arts** or to **Jewelry-Agreed Value**.

10. **Parts:** In case of loss or damage to any part of property covered, consisting of several parts when complete, we shall pay only for the value of the part loss or damaged.

11. **Deductible:** Each claim for loss or damage will be adjusted separately. We will deduct the amount stated in the Declarations or Schedule from each adjusted claim.

12. **Territorial Limits:** We cover the described property wherever it may be located. But we cover described **Fine Arts** only while within the limits of the continental United States, the State of Hawaii and Canada.

13. **Repurchase of Surrendered Jewelry:** You may request us to sell to you, at a price you and we agree upon, jewelry shown in the Declarations or Schedule under **Jewelry-Agreed Value**, which you have surrendered to us under the terms and conditions of the policy.

Alabama

# AMENDMENT OF COVERAGE B - OTHER STRUCTURES

17360 (3-97)

Homeowners Policy - Form 3

It is agreed:

Under **SECTION I - PROPERTY PROTECTION, COVERAGES, b. COVERAGE B - OTHER STRUCTURES** is deleted and replaced by the following:

**b.    Coverage B - Other Structures**

**(1)  Covered Property**

**We** cover:

**(a)**  other structures at the **residence premises** which are not attached to the dwelling.  This includes structures which are connected to the dwelling by only a utility line, fence or other similar connection.

**(b)**  other structures which **you** own and **you** use in connection with the **residence premises** that are located at an **insured premises** other than the **residence premises**.

**(2)  Property Not Covered**

**We** do not cover:

**(a)**  any structures used for **business** purposes.

**(b)**  if not located at the **residence premises**:

**1)**  structures used as dwellings; nor

**2)**  structures originally constructed for use as a dwelling.

**(c)**  any land, including land the structures occupy.

**(3)  Optional Coverage**

If there are no other structures insured by this coverage, the limit of liability for this coverage shall be optional coverage.  If there are other structures insured by this coverage and the limit of liability for this coverage exceeds the total replacement cost, as determined by **us**, of all such structures, the difference shall be optional coverage.

At **your**  option, any optional coverage may be applied to increase the limit of liability applicable:

**(a)**  to Coverage A - Dwelling; or

**(b)**  to Coverage C - Personal Property; or

**(c)**  to Coverage A - Dwelling and to Coverage C - Personal Property.

In no event shall the separate amounts of optional coverage applied to Coverage A - Dwelling and to Coverage C - Personal Property, when added together, exceed the total amount of optional coverage.

This provision applies only if loss or damage to your dwelling or your personal property or to both exceeds the applicable limit of liability and the amount you actually and necessarily spend to repair or replace the damaged property exceeds the applicable limit of liability for the respective coverage.

All other policy terms and conditions apply.

**Alabama**
# POLICY CANCELLATION AND NONRENEWAL
**Homeowners Policy**

17381 (2-96)

It is agreed:

Under **GENERAL POLICY CONDITIONS**, the following conditions are added:

1.  **CANCELLATION**

    a.  **You** may cancel this policy by returning it to **us** or by giving **us** written notice of the future date at which **you** wish cancellation to take effect.

    b.  **We** may cancel this policy by mailing or delivering written notice stating the reason for cancellation to **you** at the address shown in the Declarations.  This notice shall be mailed or delivered:

        (1)  at least 10 days prior to the effective date when cancellation is for nonpayment of premium; or

        (2)  when cancellation is for a reason other than nonpayment of premium:

            (a)  at least 10 days prior to the effective date when this policy has been in effect for less than 60 days and is not a renewal; or

            (b)  at least 30 days prior to the effective date when this policy has been in effect for 60 days or more, or is a renewal.

    If this policy has been in effect less than 60 days and is not a renewal, **we** may cancel for any reason.  If this policy has been in effect for 60 days or more, or is a renewal, **we** may cancel for one or more of the following reasons:

        (1)  nonpayment of premium, whether payable directly to **us** or **our** agent or indirectly under any premium finance plan;

        (2)  policy obtained by misrepresentation or fraud; or

        (3)  substantial change or increased hazard in the risk **we** originally accepted.

2.  **NONRENEWAL**

    If **we** decide not to renew this policy, **we** will mail or deliver written notice stating the reason for nonrenewal to **you** at the address shown in the Declarations.  This notice shall be mailed or delivered at least 30 days prior to the expiration of this policy.

All other policy terms and conditions apply.

**Alabama**
# AMENDATORY ENDORSEMENT
**Homeowners Policy**

17444 (4-04)

It is agreed:

1. Under **DEFINITIONS**, the following definitions are added:

   **Actual cash value** shall mean the cost to replace damaged property with new property of similar quality and features reduced by the amount of **depreciation** applicable to the damaged property immediately prior to the loss.

   **Depreciation** shall mean a decrease in value because of age, wear, obsolescence or market value.

2. Under **SECTION I - PROPERTY PROTECTION, EXCLUSIONS**:

   a. The following exclusion is deleted:

      An action by or at the direction of any **insured** committed with the intent to cause a loss.

   b. The following exclusion is added:

      An action by or at the direction of any **insured** committed with the intent to cause a loss. This exclusion shall not apply to an innocent **insured** subject of abuse. **Our** payment of loss to an innocent **insured** subject of abuse will be to the extent of such innocent **insured's** interest in the property less any payments **we** make to any mortgagee and within the limit of insurance applicable to such property when the damage or loss was proximately related to and in the furtherance of abuse.

      To recover for a loss under this endorsement, the innocent **insured** must:

      (1) file a complaint under the Protection from Abuse Act, Section 30-5-1 et seq., Code of Alabama 1975 against the abuser for the act causing the loss and not voluntarily dismiss the complaint; or

      (2) seek a warrant for the abuser's arrest for the act causing the loss and cooperate in the prosecution of the abuser.

3. Under **GENERAL POLICY CONDITIONS, OUR RIGHT TO RECOVER PAYMENT** only for this endorsement is deleted and replaced by the following:

   If we pay an innocent **insured** for loss arising out of an act of abuse by another **insured**, the rights of the innocent **insured** to recover damages from the abuser are transferred to **us** to the extent of **our** payment. Following the loss, the innocent **insured** may not waive such rights to recover against the abuser.

All other policy terms and conditions apply.

# WATERCRAFT LIABILITY AMENDATORY ENDORSEMENT
## Homeowners Policy

17447 (3-97)

It is agreed:

**SECTION II - PERSONAL LIABILITY PROTECTION** is amended as follows:

1. Exclusion a.(6) does not apply with regard to only a jet propelled **watercraft** less than 16 feet in length not owned by any **insured**.

2. Exclusion b.(6) and exclusion c.(3) do not apply with regard to only **bodily injury** sustained by an **insured** because of or arising out of the maintenance or use of only a **watercraft** covered by Coverage E - Liability Coverage.

All other policy terms and conditions apply.

# PERSONAL PROPERTY REPLACEMENT COST
## Homeowners Policy

17618 (2-96)

It is agreed:

1. As used in only this endorsement, full cost to replace means the cost, at the time of loss, of a new article:

   a. identical to the damaged, destroyed or stolen article; or

   b. of comparable quality when an identical article is no longer available.

2. **We** will adjust a claim for covered loss to covered property that:

   a. is personal property insured under SECTION I - PROPERTY PROTECTION, Coverage C - Personal Property;

   b. are structures that are not buildings which are located at the **residence premises**;

   c. are antennas, carpeting, awnings, domestic appliances and outdoor equipment, whether or not attached to buildings; and

   d. is personal property separately described and specifically insured by the policy, other than:

      (1) **watercraft**, including their equipment, accessories and parts;

      (2) outboard motors; and

      (3) **recreational vehicles**, including their equipment, accessories and parts;

   on the basis of the full cost to repair or the full cost to replace the damaged property without a deduction for depreciation.

3. The provisions of this endorsement do not apply to:

   a. antiques, fine arts, paintings and similar property which is rare or an antique and cannot be replaced;

   b. momentos, souvenirs, collectors items, trading cards and similar property, the age or history of which contributes to its value;

   c. any item which is:

      (1) broken or awaiting repair;

      (2) no longer capable of or will no longer be used to perform the function for which it was designed; or

      (3) obsolete or useless to the **insured**.

4. In no event shall **we** pay more than the smallest of the following:

   a. the full cost to replace the article at the time of loss;

   b. the full cost to repair the article;

   c. any applicable special limit stated in SECTION I - PROPERTY PROTECTION, Coverage C - Personal Property of the policy; or

   d. the limit of insurance stated in the Declarations for Coverage C - Personal Property.

5. If the full cost to replace all damaged covered property under the provisions of this endorsement exceeds $500, **we** will pay no more than the actual cash value of such property until actual repair or replacement of such property is completed. Actual cash value includes a deduction for depreciation.

6. An **insured** may choose to disregard the provisions of this endorsement when making a claim under the policy and accept an actual cash value settlement which will include a deduction for depreciation. If so, that **insured** shall have the right to make a further claim under the terms of this endorsement within 180 days after the loss.

All other policy terms and conditions apply.

# GUARANTEED HOME REPLACEMENT COST
### Homeowners Policy - Form 3

17662 (2-96)

It is agreed:

If, prior to a covered loss to **your** dwelling, **you** have:

1.  permitted **us** to increase the Coverage A - Dwelling limit of insurance stated in the Declarations to reflect:

    a.  any increase because of inflation; and

    b.  any property valuation estimates made by **us**; and

2.  notified **us** within 30 days from the start of any alterations to **your** dwelling which increase its replacement cost by 5% or $5,000, whichever is less;

3.  paid an additional premium for any increase in the limit of insurance;

then at the time of a covered loss to **your** dwelling, if **you** repair or replace **your** dwelling;

1.  the Coverage A - Dwelling limit of insurance stated in the Declarations shall, if necessary, be increased to equal the current replacement cost of **your** dwelling and shall apply to the cost of repairing or replacing **your** dwelling at the **residence premises**; and

2.  if the Coverage A - Dwelling limit of insurance stated in the Declarations is increased, then the limit of insurance stated in the Declarations for:

    a.  Coverage B - Other Structures;

    b.  Coverage C - Personal Property; and

    c.  Coverage D - Additional Living Expense and Loss of Rents;

    shall be increased by the same percentage that the Coverage A - Dwelling limit of insurance has been increased; and

3.  the policy premium shall be increased from the date of loss to the end of the policy term to reflect these increases in the limits of insurance.

All other policy terms and conditions apply.

17781 (6-05)

## AMENDATORY ENDORSEMENT - FREEZING EXCLUSION
### Homeowners Policy Forms 3, 4, 6 and
### Premier Plus Homeowners Policy

It is agreed:

**SECTION I - PROPERTY PROTECTION**

Under **EXCLUSIONS**:

1. The following exclusion is deleted:

   Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless, prior to the loss, **you** have either:

   **a.** shut off the water supply and drained the systems and appliances; or

   **b.** maintained heat in the building.

2. The following exclusion is added:

   Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless **you** take precautions to:

   **a.** shut off the water supply and drain the systems and appliances; or

   **b.** maintain heat in the building.

All other policy terms and conditions apply.

17780 (5-03)

# ACCIDENTAL DEATH BENEFIT
### Homeowners

It is agreed:

## DEFINITIONS

The following definitions apply in addition to those contained in **SECTION I - DEFINITIONS** of the policy.

1. **Eligible person** means **you** or a **relative**.

2. **Private passenger automobile** means:

   a. a passenger or station wagon type **motor vehicle** with four or more wheels;

   b. pickup or van type **motor vehicle** with a gross weight of 15,000 pounds or less which is not used in the business of carrying passengers for hire; or

   c. a motorhome.

## COVERAGE

**We** shall pay an accidental death benefit in the event of a death of an **eligible person** provided:

1. death is not the direct result of **bodily injury** sustained in an accident while occupying a **private passenger automobile** or while getting into or out of a **private passenger automobile**; and

2. death of the **eligible person** occurs within 90 days of the date the **bodily injury** was sustained.

## EXCLUSIONS

**We** shall not pay an accidental death benefit if death results in any way from:

1. suicide, if sane;

2. intentional self-injury;

3. sickness of the body or mind;

4. infection or disease except:

   a. pyogenic infections which occur through an accidental cut or wound; and

   b. accidental ingestion of a poisonous food substance;

5. taking part in a felony;

6. asphyxiation, poison, gas or drugs as a result of a voluntary act of the **eligible person** except drugs taken as prescribed by a duly licensed physician;

7. an act of war, declared or undeclared, or any act related to war; or

8. operating, descending from or riding in any type of **aircraft**. This also applies to persons being flown for the purpose of descent from the **aircraft** while in flight. This does not apply to a passenger with no duties on board an **aircraft** operated:

    a. commercially over scheduled routes to transport passengers for hire; or

    b. by a private business to transport its personnel or guests.

## PAYMENT OF BENEFITS

**We** shall pay the accidental death benefit shown in the Declarations to the deceased **eligible person's** surviving spouse; if none, to surviving children, share and share alike; if none, to surviving parents, share and share alike; if none, to the **eligible person's** estate.

## BENEFIT LIMIT

1. **We** shall pay no more than the accidental death benefit limit shown in the Declarations for each **eligible person** for whom this benefit is payable.

2. The limit of insurance is not increased because of the number of:

    (a) **insureds**;

    (b) persons injured;

    (c) claims made or **suits** brought; or

    (d) **insured premises** shown in the Declarations or premiums charged.

## CONDITIONS

1. **We** must be furnished with:

    a. a copy of the **eligible person's** death certificate; and

    b. a sworn statement which identifies the person(s) entitled to the benefit.

2. This benefit is primary and shall not be reduced by or be used to reduce any other coverage or benefit provided by this policy or a policy issued by **us** or a Company affiliated with **us**, except the Accidental Death Benefit of an Automobile policy issued by **us** or a Company affiliated with **us**.

All other policy terms and conditions apply.

17886 (6-05)

# NOTICE TO POLICYHOLDERS
# IDENTITY THEFT EXPENSE COVERAGE

Auto-Owners Insurance Group now offers Identity Theft Expense Coverage. This endorsement, when added to any Auto-Owners Insurance Group *Homeowners or Mobile Homeowners* policy, provides coverage of up to $15,000 for expenses incurred in the event of an identity theft. Although many credit card companies and banks may cover the financial losses, they do not cover the expenses associated with restoring one's identity. Auto-Owners Identity Theft Expense Coverage endorsement covers the expenses incurred to restore your financial identity. These expenses include, but are not limited, to the following:

- Preparation and notarization of documents,
- Loan reapplication fees,
- Lost earnings as a result of time off from work,
- Reasonable attorney fees, and
- Bond premiums.

## TIPS TO HELP YOU PREVENT IDENTITY THEFT

√ Do not carry your social security card in your wallet or purse.
√ Do not give out your social security number or any account numbers to anyone over the phone, mail or internet.
√ At least once a year, order a copy of your credit report from the three credit reporting agencies (Equifax, Experian and TransUnion) and review them carefully. Report any discrepancies immediately.
√ Use a crosscut paper shredder to dispose of documents which contain personal information such as credit card offers, bank account or credit card statements.
√ Do not use any personal identification information for your passwords or PIN numbers such as social security number, mother's maiden name, birth date, etc.
√ Carefully review your monthly bills and account statements. If you detect any inaccuracies, report them immediately.

These are only a few tips that can help you protect your identity. Using due diligence and care with your personal information will safeguard you from being a victim of identity theft.

If you become a victim, you should report the crime to the police, the Federal Trade Commission, credit reporting agencies, and your creditors.

Please contact your Auto-Owners agent if you are interested in adding this coverage to your policy.

# HOMEOWNERS POLICY
## FORM 3

17903 (2-96)

This policy is a legal contract between you and us.

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

The **DECLARATIONS** contain:

Your name
Location of the residence premises
Policy Term
Coverages
Limits of Insurance
Deductible (Amounts)

<u>You Will Find</u>

<u>On Page</u>

**INSURING AGREEMENT**

1

**DEFINITIONS**

1

**SECTION I - PROPERTY PROTECTION**
COVERAGES    3
PERILS WE INSURE AGAINST    3
EXCLUSIONS    7
ADDITIONAL COVERAGES    9
DEDUCTIBLE    11
CONDITIONS    14
   14

**SECTION II - PERSONAL LIABILITY PROTECTION**
COVERAGES    18
EXCLUSIONS    18
ADDITIONAL COVERAGES    19
LIMIT OF INSURANCE    21
CONDITIONS    23
   23

**WHAT TO DO IN CASE OF LOSS**
PROPERTY    24
PERSONAL LIABILITY PROTECTION    24
MEDICAL PAYMENTS    25
   25

**GENERAL POLICY CONDITIONS**
ASSIGNMENTS    25
CONCEALMENT OR FRAUD    25
CHANGES    25
INSPECTIONS    25
OUR RIGHT TO RECOVER PAYMENT    26
RECOVERIES    26
   26

# HOMEOWNERS POLICY
## FORM 3
## INSURING AGREEMENT

The attached Declarations describe the property **we** insure and the Coverages and Limits of Insurance for which **you** have paid a premium. In reliance upon **your** statements in the Declarations and application(s), **we** agree to provide insurance subject to all terms and conditions of this policy. In return, **you** must pay the premium and comply with all the terms and conditions of this policy. This policy applies to losses, **bodily injury, property damage** and **personal injury** which occur during the policy term shown in the Declarations.

## DEFINITIONS

To understand this policy, **you** must understand the meaning of the following words. These words appear in **bold face type** whenever used in this policy and endorsements attached to this policy.

1. **Aircraft** means a conveyance designed or used for flight including self-propelled missiles and spacecraft.

2. **Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person. **Bodily injury** does not include **personal injury**.

3. **Business** means:

   a. any full or part time trade, profession or occupation;

   b. home day care services provided by an **insured**; and

   c. rental or holding out for rental to others of any premises by any **insured**.

   **Business** does not include:

   a. home day care services:

      (1) any **insured** provides on an infrequent and irregular basis;

      (2) provided part time by a **relative** who is under 21 years of age;

      (3) provided to a **relative** by any **insured**; nor

      (4) provided on a mutual exchange basis;

   b. occasional rental or holding out for occasional rental to others of the **residence premises** for use as a dwelling;

   c. rental or holding out for rental to others a part of the **residence premises** for use as a dwelling, provided the rental is to no more than two roomers or boarders in any single family unit; nor

   d. rental or holding out for rental to others a part of the **residence premises** as a private garage, office, school or studio.

4. **Incident** means an offense(s) committed by any **insured** resulting in **personal injury** and includes, as one incident, all continuous or repeated exposure to substantially the same generally harmful condition.

5. **Insured** means:

   a. **you**;

   b. **your relatives**; and

   c. any other person under the age of 21 residing with **you** who is in **your** care or the care of a **relative**.

   In SECTION II - PERSONAL LIABILITY PROTECTION, **insured** also means:

1

**d.** with respect to any vehicle covered by this policy:

    **(1)** any employee of a person in a., b. or c. above, while engaged in the employment of that person; or

    **(2)** any other person **you** permit to use the vehicle while on an **insured premises**.

**e.** any person or organization legally responsible for animals or **watercraft** covered by this policy and owned by a person in a., b. or c. above. However, **we** will cover that person or organization only with respect to those animals or **watercraft**. **We** will not cover any person nor organization using or having custody of animals or **watercraft** in the course of any **business** nor without permission of the owner.

**6.** **Insured premises** means:

**a.** the **residence premises**;

**b.** any structures or grounds **you** use in connection with **your residence premises**;

**c.** any other premises **you** acquire during the policy term and which **you** intend to use as a **residence premises**;

**d.** that part of any other premises where **you** reside and which is shown in the Declarations;

**e.** any part of a premises not owned by any **insured** but where any **insured** may be temporarily residing;

**f.** any part of a premises not owned by any **insured** which any **insured** may rent for non-business purposes, such as banquet halls and storage facilities;

**g.** vacant land, other than farmland, owned by or rented to any **insured**;

**h.** Cemetery plots or burial vaults owned by any **insured**;

**i.** land owned by or rented to any **insured** on which a one or two family dwelling is being constructed as a residence for the **insured**; and

**j.** 200 or less acres of farmland on which there are no buildings when such land is farmed by anyone other than any **insured**.

**7.** **Motor vehicle** means a motorized land vehicle. **Motor vehicle** does not include a **recreational vehicle**.

**8.** **Occurrence** means an accident that results in **bodily injury** or **property damage** and includes, as one **occurrence**, all continuous or repeated exposure to substantially the same generally harmful conditions.

**9.** **Personal injury** means:

**a.** libel, slander or defamation of character;

**b.** false arrest, detention or imprisonment, or malicious prosecution;

**c.** invasion of privacy; or

**d.** wrongful eviction or wrongful entry.

**Personal injury** does not include **bodily injury**.

**10.** **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, liquids, gases and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**11.** **Property damage** means damage to or destruction of tangible property including resulting loss of use of that property.

**12.** **Recreational vehicle** means a motorized land vehicle designed primarily for recreational purposes but not designed for travel on public roads. **Recreational vehicle** does not include **watercraft**.

**13.** **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage or adoption. **Relative** includes a ward or foster child who resides with **you**.

14. **Residence employee** means:

   a. an employee of any **insured** whose duties are in connection with the maintenance or use of the **residence premises**, including household or domestic services; or

   b. an employee who performs similar duties elsewhere but not in connection with any **insured's business**.

15. **Residence premises** means:

   a. the one or two family dwelling where **you** reside, including the building, the grounds and other structures on the grounds; or

   b. that part of any other building where **you** reside, including grounds and structures;

   which is described in the Declarations.

16. **Suit** means a civil court proceeding in which damages because of **bodily injury**, **property damage** or **personal injury** to which this insurance applies are alleged.

17. **You** or **your** means the first named insured shown in the Declarations and if an individual, **your** spouse who resides in the same household.

18. **Watercraft** means a conveyance capable of being used as a means of transportation on water.

19. **We**, **us** or **our** means the Company providing this insurance.

## SECTION I - PROPERTY PROTECTION

1. **COVERAGES**

   a. **Coverage A - Dwelling**

      (1) **Covered Property**

         **We** cover:

         (a) **your** dwelling located at the **residence premises** including structures attached to that dwelling. This dwelling must be used principally as **your** private residence.

         (b) construction material and supplies at or next to **your residence premises** for use in connection with **your** dwelling or other structures insured under Coverage B - Other Structures.

      (2) **Property Not Covered**

         **We** do not cover any land, including land **your** dwelling occupies.

   b. **Coverage B - Other Structures**

      (1) **Covered Property**

         **We** cover:

         (a) other structures at the **residence premises** which are not attached to the dwelling. This includes structures which are connected to the dwelling by only a utility line, fence or other similar connection.

         (b) other structures which **you** own and **you** use in connection with the **residence premises** that are located at an **insured premises** other than the **residence premises**.

      (2) **Property Not Covered**

         **We** do not cover:

         (a) any structures used for **business** purposes.

         (b) if not located at the **residence premises**:

3

**1)** structures used as dwellings; nor

**2)** structures originally constructed for use as a dwelling.

**(c)** any land, including land the structures occupy.

If the replacement cost of all structures covered under (1)(a) above is less than the limit of insurance, **we** will add the excess amount to the limit of insurance for Coverage A - Dwelling. If there are no other structures, **we** will add the limit of insurance for this coverage to the limit of insurance for Coverage A - Dwelling. This provision applies only if loss or damage to **your** dwelling exceeds the limit of insurance for Coverage A - Dwelling and **you** repair or replace the damaged property and the amount **you** actually and necessarily spend exceeds the limit of insurance for Coverage A - Dwelling.

**c. Coverage C - Personal Property**

**(1) Covered Property**

**We** cover:

**(a)** personal property owned or used by any **insured** anywhere in the world including property not permanently attached to or otherwise forming a part of realty.

**(b)** at **your** option, personal property owned by others while it is in that part of the **residence premises** occupied by any **insured**.

**(c)** at **your** option, personal property of a house guest or **residence employee** while in any residence of any **insured**.

**(d)** any personal property which is usually at any **insured's** residence other than the **residence premises** for up to 10% of the Coverage C -

Personal Property limit but not less than $1,000. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after **you** begin to move there.

**(2) Property Not Covered**

**We** do not cover:

**(a)** animals, birds or fish.

**(b)** **aircraft**, their equipment, accessories or parts. **We** do cover model **aircraft** neither designed nor used for transporting persons or cargo.

**(c)** personal property of roomers and boarders who are not related to any **insured**.

**(d)** personal property of tenants.

**(e)** data used for **business** including the media used to store the data. This includes:

**1)** electronic data storage devices; and

**2)** paper records of any kind.

**We** do cover the cost of unexposed or blank media and the cost of pre-recorded computer programs which are available in the retail market place.

**(f)** personal property rented to or held out for rental to others by any **insured**. **We** do cover such personal property while on that part of the **residence premises** used exclusively by any **insured** or roomers and boarders.

**(g)** personal property except **your** appliances and other household furnishings in that part of the **residence premises** regularly rented to

4

or held out for rental to others (except roomers or boarders) by any **insured** for use as living quarters.

**(h)** **motor vehicles** and **recreational vehicles**.

**We** do cover:

1) **motor vehicles** not subject to registration by a state regulatory agency which are used primarily for servicing and maintaining the **residence premises**.

2) **recreational vehicles** which are used primarily for servicing and maintaining the **residence premises**.

3) A conveyance designed primarily to provide mobility to the handicapped, provided it is not licensed for operation on public roadways.

4) electrically powered vehicles designed for and used as a toy.

**(i)** **motor vehicle** and **recreational vehicle** equipment, accessories and parts.

**We** do cover:

1) citizens band radios, cellular telephones, radio transceivers, radio transmitters and similar transmitting equipment; and

2) devices or instruments for the recording or reproduction of sound;

while in or upon a **motor vehicle** or **recreational vehicle** if capable of being operated by both electrical current from the vehicle operating system and electrical current from

a source other than the vehicle; and

3) accessories, antennas, tapes, wires, records, discs and other media for use with the items described in (i)1) and 2) above while in or upon such vehicles.

4) spare or replacement **motor vehicle** and **recreational vehicle** equipment, accessories or parts when not installed in or upon the **motor vehicle** or **recreational vehicle**.

**(j)** any device designed or used to detect, avoid or locate radar or any other speed measuring or calculating apparatus while in or upon a **motor vehicle**.

**(k)** property specifically described and insured by this policy or any other insurance.

**(l)** contraband or property in the course of illegal transportation or trade; or property seized or subject to seizure by any governmental authority.

**(3)** **Special Limits of Insurance for Certain Personal Property**

Special limits of insurance apply to the following groups of personal property. These limits do not increase the limit of insurance for Coverage C - Personal Property. The special limit for each group is the most **we** will pay in any one loss for all personal property in that group.

**(a)** $250 for money, bank notes, and bullion; coins and medals and other numismatic property; and precious metals including platinum, gold and silver, but not goldware or silverware.

5

(b) $1,000 for securities, checks, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes; passports, personal data and records, manuscripts, tickets; and stamps and other philatelic property. This limit applies to these categories regardless of the media on which the material exists and includes the cost to research, replace or restore the information from the lost or damaged material.

(c) $1,000 for **watercraft**, including their equipment, accessories or parts, trailers and outboard motors.

(d) $1,000 for trailers not used to transport **watercraft**.

(e) $1,000 for theft of jewelry, watches, precious and semi-precious stones, and furs, including any article containing fur which represents its principal value.

(f) $2,500 for cemetery markers, headstones and urns.

(g) $5,000 for theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

(h) $2,500 for theft of guns and their accessories, parts or equipment.

(i) $2,500 for personal property located on the **residence premises** that is used in any way or at any time for **business** purposes.

(j) $1,000 for personal property located away from the **residence premises** that is used in any way or at any time for **business** purposes.

(k) $10,000 for loss by theft of carpets (except wall-to-wall carpet), tapes-tries, rugs, wall-hangings or other similar articles. However, **we** shall not pay more than $5,000 for any one article.

(l) $1,000 for trading cards.

(m) $2,500 for spare or replacement **motor vehicle** and **recreational vehicle** equipment, accessories or parts when not installed in or upon the **motor vehicle** or **recreational vehicle**.

(n) $2,500 for **your** appliances and other household furnishings in that part of the **residence premises** regularly rented to or held for rental to others (except roomers or boarders) by **you**.

(o) $1,000 for:

　　1) citizens band radios, cellular telephones, radio transceivers, radio transmitters and similar transmitting equipment; and

　　2) devices or instruments for the recording or reproduction of sound;

　　while in or upon a **motor vehicle** or **recreational vehicle** if capable of being operated by both electrical current from the vehicle operating system and electrical current from a source other than the vehicle; and

　　3) accessories, antennas, tapes, wires, records, discs and other media for use with items (o)1) and (o)2) above while in or upon such vehicles. However, **we** shall pay no more than $250 in any one loss for these items.

**d. Coverage D - Additional Living Expense And Loss Of Rents**

6

If a covered loss makes **your residence premises** unfit to live in, **we** will pay, at **your** option, either:

(1) the reasonable increase in **your** living expenses necessary to maintain **your** normal standard of living while **you** live elsewhere; or

(2) the fair rental value of that part of the **residence premises** where **you** reside, less any charges and expenses which do not continue while the **residence premises** is unfit to live in.

**We** will pay for only the shortest time required to repair or replace the **residence premises** or for **you** to permanently relocate. **We** will also pay for **your** loss of normal rents resulting from a covered loss while the rented part of the **residence premises** is unfit to live in, less charges and expenses which do not continue during that time. **We** will pay this loss of normal rents only for the shortest time needed to make the rented part fit to live in.

If damage caused by a peril **we** insure against occurs at a neighboring premises, **we** will pay reasonable additional living expenses and loss of normal rents as provided in (1) and (2) above for up to two weeks provided civil authorities prohibit occupancy of the **residence premises**.

These periods of time will not be shortened by the expiration of this policy. **We** will not pay for loss or expense because of the cancellation of any lease or agreement.

A deductible amount stated in the Declarations shall apply only once if damage resulting from the same loss is covered under more than one of the coverages described above.

## 2. PERILS WE INSURE AGAINST

### a. Coverage A - Dwelling and Coverage B - Other Structures

**We** cover risk of accidental direct physical loss to covered property described under Coverage A - Dwelling and Coverage B - Other Structures except for losses excluded elsewhere in this policy.

### b. Coverage C - Personal Property

**We** cover risk of accidental direct physical loss to covered property described under Coverage C - Personal Property caused by any of the following perils except for losses excluded elsewhere in this policy:

(1) Fire or Lightning.

(2) Windstorm or Hail. This peril does not include loss:

    (a) to covered property in any building, caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters the building; nor

    (b) to **watercraft** (except rowboats and canoes while on **residence premises**) and their trailers, equipment, accessories, parts and motors unless inside a fully enclosed building.

(3) Explosion.

(4) Riot or Civil Commotion.

(5) **Aircraft**.

(6) Vehicles.

(7) Smoke, if the loss is sudden and accidental. This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

(8) Vandalism and Malicious Mischief.

(9) Theft or Attempted Theft, including loss of covered property from a known place if it is likely that a theft has occurred.

    (a) This peril does not include theft:

7

**1)** committed by any **insured** or by any other person regularly residing at the **residence premises**. Covered property of a student who is an **insured** is covered while located at a residence away from the **residence premises**, if the theft is committed by a person who is not an **insured**;

**2)** in or from a dwelling under construction or of construction materials and supplies until the dwelling is completed and occupied; nor

**3)** from any part of the **residence premises** rented by any **insured** to other than an **insured**.

**(b)** This peril does not include theft away from the **residence premises** of:

**1)** covered property while in any other residence or its premises owned, rented or occupied by any **insured** except while any **insured** is temporarily residing there. Covered property of any **insured** who is a student is covered at a residence away from the **residence premises** if the student has been there at any time during the 45 days just before the loss.

If the **residence premises** is a newly acquired residence, covered property in the immediate past residence shall not be considered property away from the **residence premises** for the first 30 days after **you** begin moving covered property from that residence;

**2)** **watercraft** and their equipment, accessories, parts and outboard motors; nor

**3)** trailers, camping trailers and campers designed to be pulled by or carried on a **motor vehicle.**

**(10)** Falling Objects. This peril does not include loss to covered property within a building unless the falling object first damages the exterior of the building. **We** do not cover damage to the falling object.

**(11)** Weight of ice, snow or sleet which damages covered property in a building.

**(12)** Sudden and accidental tearing apart, cracking, burning or bulging of a heating, air conditioning or automatic fire protection sprinkler system or a water heating appliance. This peril does not include loss which is caused by or results from freezing.

**(13)** Accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance. This peril does not include loss:

**(a)** to the appliance or system from which the water or steam escapes;

**(b)** caused by or resulting from freezing, except as provided by the peril of freezing; nor

**(c)** caused by or resulting from water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area.

A plumbing system does not include a sump, sump pump or related equipment.

8

**(14)** Freezing of plumbing, heating, air conditioning or an automatic fire protection sprinkler system or a domestic appliance.

**(15)** Sudden and accidental loss caused by an increase or decrease of artificially generated electrical currents. This peril does not include loss to tubes, transistors or similar electronic components.

**(16)** Volcanic Eruption. This peril does not include loss caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption. All volcanic eruptions that occur within a period of 72 hours will be considered one volcanic eruption.

## 3. EXCLUSIONS

**a.** **Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property**

**We** do not cover loss to covered property caused directly or indirectly by any of the following, whether or not any other cause or event contributes concurrently or in any sequence to the loss:

**(1)** Enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy. This exclusion does not apply to loss to covered property caused by actions of civil authorities to prevent the spread of a fire caused by a peril **we** insure against.

**(2)** Earth movement, meaning earthquake, including land shock waves or tremors before, during or after volcanic eruption; landslide; mine subsidence; mudflow; erosion; earth sinking; rising or shifting. This exclusion does not apply to ensuing direct loss caused by fire, explosion, breakage of building glass or safety glazing material or theft.

**(3)** Water damage, meaning:

**(a)** flood, surface water, waves, tidal water or overflow of a body of water. **We** do not cover spray from any of these, whether or not driven by the wind;

**(b)** water or sewage from outside the plumbing system that enters through sewers or drains;

**(c)** water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

**(d)** water below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building, sidewalk, driveway, swimming pool or other structure.

This exclusion does not apply to ensuing direct loss to covered property caused by theft, fire or explosion.

**(4)** Failure or interruption of power or other utility service which occurs away from the **residence premises**. **We** will pay for loss caused solely by a peril **we** insure against that ensues at the **residence premises**.

**(5)** Freezing of plumbing, heating, air conditioning or automatic fire protection sprinkler systems or domestic appliances, or by discharge, leakage or overflow from the system or appliance caused by freezing while the building is vacant, unoccupied or in the course of construction unless, prior to the loss, **you** have either:

**(a)** shut off the water supply and drained the systems and appliances; or

**(b)** maintained heat in the building.

9

(6) Failure of any **insured** to use all reasonable means to protect covered property at and after the time of loss or when the covered property is endangered.

(7) War, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.

(8) Nuclear action, meaning nuclear reaction, radiation, radioactive contamination, however caused and whether controlled or uncontrolled, or any consequence of any of these. Nuclear action includes the discharge of a nuclear weapon, even if accidental. Loss caused by nuclear action is not considered loss by the perils of Fire, Explosion or Smoke. Direct loss by fire resulting from nuclear action is covered.

(9) An action by or at the direction of any **insured** committed with the intent to cause a loss.

b. **Coverage A - Dwelling and Coverage B - Other Structures**

Except as to ensuing loss not otherwise excluded, **we** do not cover loss resulting directly or indirectly from:

(1) Weather conditions which contribute in any way with any events excluded in exclusions 3.a.(1) through 3.a.(9) above to cause the loss;

(2) Acts or decisions of any person, group, organization or governmental body, or their failure to act or decide.

(3) Faulty, inadequate or defective:

   (a) construction, reconstruction, repair, remodeling or renovation;

   (b) materials used in construction, reconstruction, repair, remodeling or renovation;

   (c) design, workmanship or specifications;

   (d) siting, surveying, zoning, planning, development, grading or compaction; or

   (e) maintenance;

of a part or all of the **residence premises** or any other property.

(4) (a) wear and tear, marring, scratching or deterioration;

   (b) inherent vice, latent defect or mechanical breakdown;

   (c) rust, corrosion or electrolysis, mold or mildew, or wet or dry rot;

   (d) smog, smoke from agricultural smudging or industrial operations;

   (e) settling, shrinkage, bulging or expansion, including resultant cracking of pavement, patios, foundations, walls, floors or ceilings;

   (f) birds, vermin, rodents or insects;

   (g) animals owned or kept by any **insured**; or

   (h) discharge, release, escape, seepage, migration or dispersal of **pollutants** unless caused by a peril **we** insure against under Coverage C - Personal Property. This exclusion does not apply to ADDITIONAL COVERAGE, o. Heating Fuel Damage.

If because of any of these, water escapes from a plumbing, heating, air conditioning or automatic fire protection sprinkler system or domestic appliance, **we** cover loss caused by the water. **We** also cover the cost of tearing out and replacing any part of the covered building necessary to repair the system or

10

appliance. **We** do not cover loss to the system or appliance from which the water escapes.

(5) Theft in or from a dwelling under construction or of construction materials and supplies until completed and occupied.

(6) Constant or repeated seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system or from within a domestic appliance which occurs over a period of weeks, months or years.

(7) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock.

(8) Vandalism or malicious mischief or breakage of glass or safety glazing materials if the dwelling has been vacant for more than 30 consecutive days just before the loss. A building under construction is not considered vacant.

(9) Collapse of a building or any part of a building except as provided by ADDITIONAL COVERAGE, h. Collapse.

4. **ADDITIONAL COVERAGES**

a. **Debris Removal**

**We** will pay reasonable necessary expenses **you** incur to remove debris of covered property insured under Coverage A - Dwelling, Coverage B - Other Structures and Coverage C - Personal Property following a loss caused by a peril **we** insure against. **We** will also pay reasonable necessary expenses **you** incur to remove ash, dust or particles from a volcanic eruption that has caused direct loss to a building or covered property within a building. This coverage does not apply to removal of trees, limbs and branches.

If damage to the covered property and the cost of debris removal is more than **our** limit of insurance for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

b. **Fire Department Charges**

**We** will pay up to $500 for **your** liability under an agreement for service charges made by a fire department when called to protect **your** covered property from a peril **we** insure against. These payments are in addition to the amount of insurance applying to the covered property. No deductible applies to this coverage.

c. **Credit Card, Charge Plate, Fund Transfer Card, Check Forgery and Counterfeit Money Coverages**

(1) **Credit Card, Charge Plate and Fund Transfer Card Coverage**
If any **insured** is legally required to pay for the unauthorized use of a credit card or charge plate issued to any **insured** , **we** will cover the loss. **We** will also pay for loss which results from unauthorized use of a fund transfer card issued to any **insured**. A fund transfer card is one used for deposit, withdrawal or transfer of funds. **We** do not cover use of the credit card, charge plate or fund transfer card:

(a) by a resident of **your** household;

(b) by someone to whom any **insured** has given the card or plate; nor

(c) unless the **insured** has met all the terms under which the card or plate was issued.

(2) **Check Forgery Coverage**

**We** cover loss sustained by any **insured** which is caused by forgery or alteration of a check or other negotiable instruments.

11

**(3) Counterfeit Money Coverage**

**We** cover loss sustained by any **insured** because of acceptance in good faith of counterfeit United States or Canadian paper currency.

**We** will not pay more than $1,000 for any one loss involving one or more of these coverages. Repeated losses caused by one person or in which one person is involved are to be considered one loss. **We** do not cover any loss that arises from a **business** of any **insured** or dishonesty of an **insured**. No deductible applies to these coverages.

**We** may investigate any claim or settle any **suit** as **we** think appropriate. **We** will not defend after **we** have paid an amount equal to the limit of **our** liability.

If a claim is made or a **suit** is brought against any **insured** for liability under the Credit Card, Charge Plate or Fund Transfer Card Coverage, **we** will defend that **insured**. **We** will do this at **our** expense, using attorneys of **our** choice.

**We** may at **our** option and at **our** expense, defend any **insured** or that person's bank against a **suit** to enforce payment under the Check Forgery Coverage.

**d.   Emergency Removal of Personal Property**

**We** will pay for loss to covered personal property damaged in any way when being removed or while removed from an **insured premises** because of danger from a peril **we** insure against. Coverage is limited to a 30 day period beginning on the date of removal. **We** will also pay for reasonable necessary expenses incurred by **you** for the removal and return of the covered property. This is not an additional amount of insurance.

**e.   Necessary Repairs After Loss**

**We** will pay the reasonable cost of necessary, temporary repairs made solely to protect covered property from further damage

following a loss caused by a peril **we** insure against. This is not an additional amount of insurance.

**f.   Trees, Shrubs, Plants and Lawns**

**We** will pay up to 5% of the Coverage A - Dwelling limit of insurance for loss to outdoor trees, shrubs, plants and lawns at the **residence premises**. Coverage applies to only loss, including debris removal, caused by the following perils **we** insure against: Fire or Lightning, Explosion, Riot or Civil Commotion, **Aircraft**, Vehicles not owned or operated by an occupant of the **residence premises**, Vandalism and Malicious Mischief or Theft.

Payments are in addition to the limit of insurance applying to Coverage A - Dwelling. **We** will not pay:

**(1)** more than $500 for any one outdoor tree, shrub or plant; nor

**(2)** for any trees, shrubs, plants or lawns grown for **business** purposes.

**g.   Tree Debris Removal**

**We** will pay up to $500 for any one loss for reasonable necessary expenses **you** incur for removing trees, limbs and branches from the **residence premises** if:

**(1)** caused by any peril **we** insure against under Coverage A - Dwelling provided such peril is not listed under f. Trees, Shrubs, Plants and Lawns; and

**(2)** this coverage is not provided elsewhere in this policy.

The limit of $500 for any one loss applies, regardless of the number of fallen trees, limbs and branches.

**h.   Collapse**

**We** cover risk of direct physical loss involving collapse to covered property insured under Coverage A - Dwelling, Coverage B -

12

Other Structures and Coverage C - Personal Property only if:

(1) the loss involves collapse of a building or part of a building; and

(2) the collapse is caused by any of the following:

    (a) hidden decay, hidden insect damage or hidden vermin damage;

    (b) weight of people, contents, animals, equipment and/or furniture;

    (c) defective material or defective methods used in construction, reconstruction, renovation or remodeling;

    (d) weight of rain, ice, sleet or snow on a roof; or

    (e) a peril **we** insure against under Coverage C - Personal Property.

Collapse does not include settling, cracking, shrinkage, bulging or expansion.

Under h.(2)(a)-h.(2)(d) above, coverage does not apply to loss to awnings, fences, pavements, patios, swimming pools, underground pipes, flues, drains, cesspools, septic tanks, foundations, retaining walls, bulkheads, piers, wharves or docks unless damage is caused directly by collapse of a building. This is not an additional amount of insurance.

**i.  Loss Assessment**

**We** will pay up to $2,500 for **your** share of any loss assessment charged against **you** as the owner or tenant of the **residence premises** by an association or corporation of property owners if the assessment is made as a result of direct physical loss caused by a peril **we** insure against to property owned collectively by all members of the association or corporation. Coverage is included for loss occurring during the policy term if the

assessment is charged against **you** after the policy term.

**We** will not pay if the loss is caused by earthquake or land shock waves or tremors which occur before, during or after a volcanic eruption or mine subsidence. **We** will not pay for any loss assessments charged by a governmental body.

The most that **we** will pay for any one loss is $2,500 regardless of the number of assessments.

**j.  Glass or Safety Glazing Material**

**We** cover:

(1) the breakage of glass or safety glazing materials which are part of a covered building including storm doors and storm windows.

(2) damage to covered property by glass or safety glazing material which is part of a covered building including storm doors and storm windows.

This coverage does not include loss to the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately preceding the date of loss. A dwelling under construction is not considered vacant. Loss for damage to glass will be based on replacement with safety glazing materials when required by ordinance or law. This is not an additional amount of insurance.

**k.  Rekeying of Locks**

**We** will pay reasonable necessary expenses **you** incur to rekey locks on exterior doors of the dwelling located at the **residence premises**, provided the keys to such locks are a part of a theft loss covered by this policy. No deductible applies to this coverage.

**l.  Power Interruption**

**We** cover accidental direct physical loss caused directly or indirectly by a change of

13

temperature which results from a power interruption that takes place at the **residence premises**. The power interruption must be caused by a peril **we** insure against occurring at the **residence premises**. This is not an additional amount of insurance.

m. **Refrigerated Products**

**We** will pay for damage to the contents of a freezer or refrigerator located at the **residence premises** provided the damage is the direct result of a power failure away from the **residence premises**, or an electrical or mechanical failure of the refrigeration system. Power, electrical or mechanical failure does not include:

(1) removing of a plug from an electrical outlet; nor

(2) turning off of an electrical switch unless caused by a peril **we** insure against.

If any **insured** is aware of the power, electrical or mechanical failure, all reasonable action to protect the covered property from further damage must be taken or this coverage shall be void.

The most **we** will pay in any one loss is $250 regardless of the number of freezers or refrigerators involved in the loss. This is not an additional amount of insurance.

n. **Arson Reward**

**We** will pay for information which leads to a conviction for arson in connection with a fire loss to covered property insured by this policy. The most **we** will pay is $1,000 regardless of the number of persons who provide information. This payment shall be in addition to the amount of insurance applying to the covered property. No deductible applies to this coverage.

o. **Heating Fuel Damage**

**We** will pay for loss to covered property at the **residence premises** caused by or resulting from:

(1) accidental discharge or overflow of heating fuel from **your** heating system, including **your** heating fuel storage tank;

(2) delivery of heating fuel into a wrong receptacle at the **residence premises**; or

(3) delivery of one fuel for another at the **residence premises**.

This is not an additional amount of insurance.

5. **DEDUCTIBLE**

If a deductible is shown in the Declarations, no loss shall be paid until the amount of loss exceeds the deductible. The deductible shall apply to all coverages unless stated otherwise.

If this policy includes endorsements which contain separate deductibles, that deductible shall apply to loss covered by that endorsement. However, if damage resulting from the same loss is covered by this policy and an attached endorsement, only one deductible shall apply. **We** shall apply the largest applicable deductible to the entire loss.

6. **CONDITIONS**

a. **INSURABLE INTEREST**

Subject to the applicable limit of insurance, **we** will not pay more than the insurable interest the **insured** has in the covered property at the time of loss.

b. **HOW LOSSES ARE SETTLED**

Loss to covered property will be settled as follows:

(1) If the damaged covered property is:

(a) personal property insured under Coverage C - Personal Property;

(b) structures that are not buildings;

14

**(c)** antennas, carpeting, awnings, domestic appliances and outdoor equipment, whether or not attached to buildings; or

**(d)** structures covered under the provisions of Coverage B - Other Structures, subparagraph (1)(b);

**we** will pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation. In no event will **we** pay more than the smallest of either:

**(a)** the limit of insurance applying to the damaged covered property; or

**(b)** the cost to repair or replace the damaged covered property with property of like kind and quality.

**(2)** If the damaged covered property is insured under Coverage A - Dwelling or Coverage B - Other Structures and not included in (1) above, **we** will pay as follows:

**(a)** If at the time of loss, the limit of insurance applying to the damaged covered property is 80% or more of the full replacement cost of that covered property, **we** will pay the full cost to repair or replace the damaged part of such covered property. No deduction will be made for depreciation. In no event shall **we** pay more than the smallest of:

**1)** the limit of insurance applying to the damaged covered property;

**2)** the cost to replace the damaged covered property with equivalent construction for equivalent use at the **residence premises**; or

**3)** the amount actually spent to repair or replace the damaged covered property.

**(b)** If at the time of loss, the limit of insurance applying to the damaged covered property is less than 80% of the full replacement cost of that covered property, **we** will pay the greater of either:

**1)** the actual cash value of the damaged covered property; or

**2)** the cost to repair or replace the covered property, less the deductible amount, multiplied by the ratio of the limit of insurance applying to the damaged covered property to 80% of its full replacement cost. No deduction will be made for depreciation.

In no event shall **we** pay more than the smallest of:

**1)** the limit of insurance applying to the damaged covered property;

**2)** the cost to replace the damaged covered property with equivalent construction for equivalent use at the **residence premises**; or

**3)** the amount actually spent to repair or replace the damaged covered property.

If **you** do not repair or replace the damaged covered property, **we** shall pay the actual cash value of the property at the time of loss. Actual cash value includes a deduction for depreciation.

Full replacement cost does not include the cost of excavations, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor. If there is no

15

basement, it does not include the cost of those supports below the surface of the ground and inside the foundation walls.

**(3)** If the full cost to repair or replace the damaged covered property is more than $1000 or more than 5% of the limit of insurance applying to such covered property, **we** will not pay more than the actual cash value until actual repair or replacement is completed.

**(4)** **You** may disregard the provisions of b.(2) above and make an actual cash value claim for loss or damage to property covered under Coverage A - Dwelling and Coverage B - Other Structures. If **you** do, **you** may within 180 days after the loss make a further claim under the provisions of b.(2) above.

**(5)** **We** may make a cash settlement and take all or part of the damaged covered property at its appraised or agreed on value, or repair or replace the damaged property with property of like kind and quality. **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** proof of loss.

**c.   APPRAISAL**

If **you** and **we** fail to agree on the actual cash value or amount of loss covered by this policy, either party may make written demand for an appraisal. Each party will select an appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to **us**, the

amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss.

Each party will pay the appraiser it chooses, and equally pay the umpire and all other expenses of the appraisal.

**d.   ABANDONED PROPERTY**

**We** are not obliged to accept abandoned property.

**e.   LOSS TO A PAIR OR SET**

We may repair or replace any part of the pair or set to restore it to its value before the loss, or **we** may pay the difference between the actual cash value of the property before and after the loss.

**f.   OUR PAYMENT OF LOSS**

**We** will adjust any loss with **you**, and pay **you** unless another payee is named in the policy. **We** will pay within 60 days after **we** receive **your** proof of loss and all other requested documents and the amount of loss is finally determined by an agreement between **you** and **us**, a court judgment or an appraisal award.

**g.   SUIT AGAINST US**

**We** may not be sued unless there is full compliance with all the terms of this policy. **Suit** must be brought within one year after the loss or damage occurs.

**h.   NO BENEFIT TO BAILEE**

This insurance will not, in any way, benefit any person or organization who may be caring for or handling property for a fee.

**i.   OTHER INSURANCE**

If both this and other insurance apply to a loss, **we** will pay **our** share. **Our** share will

16

be the ratio of this insurance to the total amount of all insurance which applies.

**j.   ADJUSTED VALUE PROVISION**

The limit of insurance applying to Coverage A - Dwelling will be adjusted at the end of each policy term by the percentage change in construction costs during the policy term in the area in which the **residence premises** is located.

Each Renewal Declarations will show the actual percentage used to compute the revised limits of insurance. The limit for Coverage A - Dwelling will be rounded to the nearest $500 for an annual policy period, subject to a $1,000 minimum. The limit of Coverage A - Dwelling will be rounded to the nearest $250 for a six-month term, subject to a $500 minimum.

**k.   MORTGAGE CLAUSE**

This provision applies to only the mortgagee named in the Declarations. It does not affect **your** rights or duties under this policy.

The word mortgagee includes a trustee under a deed of trust and a contract seller under a land contract.

Loss covered by the policy, if any, shall be payable to the mortgagee, as their interest may appear, under all present or future mortgages upon the property described in the Declarations of this policy in which the mortgagee may have an interest. If more than one mortgagee is named in the Declarations, payment shall be made in order of precedence of the mortgages.

If **we** deny **your** claim, such denial will not apply to a valid claim of the mortgagee, provided the mortgagee:

(1)  notifies **us** of any change of ownership or occupancy or substantial change in exposure which has come to the knowledge of the mortgagee;

(2)  pays any premium due under this policy that **you** or the mortgagor has neglected to pay; and

(3)  submits to **us**, within 60 days after receiving notice from **us** of **your** failure to do so, a proof of loss signed and sworn to by the mortgagee.

Whenever **we** pay the mortgagee any sum for loss under this policy and deny payment to **you** for such loss:

(1)  to the extent of such payment, **we** are legally subrogated to all rights of the mortgagee under the terms of the mortgage on the covered property; or

(2)  at **our** option, **we** may pay to the mortgagee the whole principal due, with interest accrued, and shall then receive full assignment and transfer of the mortgage and of all collateral.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**We** may cancel or nonrenew this policy at any time as provided by its terms. **We** will notify the mortgagee at least 10 days prior to the effective date of the cancellation or nonrenewal. **We** may also cancel this agreement by providing 10 days notice to the mortgagee.

All policy terms and conditions apply to the mortgagee.

# SECTION II - PERSONAL LIABILITY PROTECTION

1. **COVERAGES**

   a. **Coverage E - Personal Liability**

   (1) **We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies. However, with respect to any **aircraft, motor vehicle, recreational vehicle** or **watercraft**:

   (a) **we** will pay damages because of or arising out of the ownership, maintenance, use, loading or unloading of only:

   1) a **motor vehicle** stored on an **insured premises** which has been rendered inoperable by complete detachment of parts, or by mechanical breakdown;

   2) **motor vehicles** not subject to registration by a state regulatory agency which are used primarily for servicing and maintaining an **insured premises**;

   3) a conveyance designed primarily to provide mobility to the handicapped, provided it is not subject to registration by a state regulatory agency;

   4) electrically powered vehicles designed for and used as toys;

   5) a **watercraft**, camper, home or utility trailer when neither being towed by nor carried on a **motor vehicle**;

   6) **recreational vehicles** owned by any **insured** while on an **insured premises**;

   7) **recreational vehicles** that are motorized golf carts;

   8) a **watercraft** owned by any **insured**:

   a) powered by inboard or inboard-outdrive motor power of 175 horsepower or less;

   b) powered by one or more outboard motors with:

   i. total combined horsepower of 120 HP or less; and

   ii. total combined horsepower not in excess of that specified by the **watercraft** manufacturer; and

   c) that is a sailboat less than 26 feet in length; and

   9) a model **aircraft** neither designed nor used for transporting persons or cargo.

   (b) **we** will pay damages because of or arising out of the maintenance, use, loading or unloading of only:

   1) a **motor vehicle** which is not owned nor operated by nor rented to nor loaned to any **insured**;

   2) a **recreational vehicle** which is not owned by any **insured**; and

   3) a **watercraft** not owned by nor available for regular use by any **insured** provided use of the **watercraft** is with a reasonable belief of permission to do so.

18

**(2) We** will pay all sums any **insured** becomes legally obligated to pay as damages because of or arising out of **personal injury** caused by an **incident** to which this coverage applies.

**We** will settle or defend, as **we** consider appropriate, any claim or **suit** for damages covered by this policy. **We** will do this at **our** expense, using attorneys of **our** choice. This agreement to settle or defend claims or **suits** ends when **we** have paid the limit of **our** liability.

**b. Coverage F - Medical Payments to Others**

A person who sustains **bodily injury** is entitled to this coverage when that person is:

**(1)** on an **insured premises** with the permission of an **insured**; or

**(2)** elsewhere, if the **bodily injury**:

   **(a)** arises out of a condition on the **insured premises** or the adjoining ways;

   **(b)** is caused by the activities of an **insured** or a **residence employee** in the course of employment by an **insured**;

   **(c)** is caused by an animal owned by or in the care of an **insured**; or

   **(d)** is sustained by a **residence employee** and arising out of and in the course of employment by an **insured**;

**(3)** injured because of the operation or use of an **aircraft, motor vehicle, recreational vehicle** or **watercraft** covered by Coverage E - Personal Liability of this policy.

**We** will pay the reasonable expenses incurred for necessary:

**(1)** medical, surgical, X-ray and dental services;

**(2)** prosthetic devices, eye glasses, hearing aids, drugs and medicines; and

**(3)** ambulance, hospital, licensed nursing and funeral services.

These expenses must be incurred within three years from the date of the **occurrence** causing **bodily injury** covered by this policy. The **bodily injury** must be discovered, treated and reported to **us** within one year of the **occurrence**.

**We** may pay the injured person or the party that renders the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured**.

**2. EXCLUSIONS**

**a. Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others** do not apply:

**(1)** to **bodily injury**, **property damage** or **personal injury** arising out of any premises owned, rented or controlled by any **insured** which is not an **insured premises**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of employment by any **insured** at such premises.

**(2)** to **bodily injury** or **personal injury** to a fellow employee of an **insured** sustained in the course of employment.

**(3)** to **bodily injury** or **personal injury** because of or arising out of corporal punishment administered by or at the direction of an **insured** if that **insured** is a member of the faculty or teaching staff of any school or college.

**(4)** to **bodily injury** or **personal injury** because of or arising out of a communicable disease transmitted by any **insured**.

19

(5) to **bodily injury** or **property damage** because of or arising out of any **insured's** preparation for, practice or participation in any prearranged racing, speed or demolition contest involving any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**. This exclusion does not apply to a **watercraft** that is a sailboat less than 26 feet in length.

(6) to **bodily injury** or **property damage** because of or arising out of the ownership, maintenance, use, loading or unloading of any water jet propelled **watercraft** of any kind less than 16 feet in length;

(7) to **bodily injury** or **property damage** because of or arising out of the ownership, maintenance, use, loading or unloading of any **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**. This exclusion does not apply:

   (a) to **aircraft**, **motor vehicles**, **recreational vehicles** or **watercraft** described under 1. COVERAGES, a. Coverage E - Personal Liability, (1)(a)1)-(1)(a)9) and (1)(b)1)-(1)(b)3); or

   (b) to **bodily injury** to any **residence employee** arising out of or in the course of employment by an **insured**.

(8) to parental liability for **bodily injury** or **property damage**, whether or not imposed by law, because of or arising out of actions of a child or minor for use of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft** if such use is excluded or otherwise limited by this policy.

(9) to **bodily injury** or **property damage** because of or arising out of:

   (a) the entrustment to any person by any **insured**; nor

   (b) the supervision of any person by any **insured**;

   with regard to the ownership, maintenance, use, loading or unloading of an **aircraft**, **motor vehicle**, **recreational vehicle** or **watercraft**.

   This exclusion does not apply:

   (a) to **aircraft**, **recreational vehicles** and **watercraft** that are covered by Coverage E - Personal Liability; nor

   (b) to **motor vehicles** that are covered by Coverage E - Personal Liability. This exception does not apply to **motor vehicles** that are not owned by any **insured**.

(10) to **bodily injury** or **property damage** because of or arising out of the rendering of or failure to render professional services of any kind.

(11) to **bodily injury** or **property damage** because of or arising out of a **business** owned or financially controlled by an **insured** or by a partnership or joint venture of which an **insured** is a partner or member. This exclusion does not apply to activities of an **insured** ordinarily incident to nonbusiness pursuits.

(12) to **bodily injury** or **property damage** reasonably expected or intended by the **insured**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that reasonably expected or intended.

(13) to **bodily injury** or **property damage** caused by war, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these.

20

**b.** **Coverage E - Personal Liability** does not apply:

   **(1)** to liability assumed under:

      **(a)** any oral contract or agreement; or

      **(b)** any contract or agreement:

         **1)** in connection with any **business** of an **insured**; nor

         **2)** entered into after the event causing the loss.

   **(2)** to liability for **your** share of any loss assessment charged against all members of an association, corporation or community of property owners. This exclusion does not apply to ADDITIONAL COVERAGE d. Loss Assessment.

   **(3)** to liability for any property stolen or converted by the **insured**.

   **(4)** to **bodily injury** or **property damage** when any **insured** is covered by or is required to be covered by a nuclear energy liability policy. This exclusion applies even if the limits of liability of that policy have been exhausted.

   **(5)** to **bodily injury** to any person if an **insured** has or is required to have a policy providing workers compensation, nonoccupational disability or occupational disease benefits covering the **bodily injury**.

   **(6)** to **bodily injury** or **personal injury** to any **insured**.

   **(7)** to **personal injury**:

      **(a)** in connection with any **business**, occupation, trade or profession; nor

      **(b)** with respect to any publication or utterance made knowing it to be false.

   **(8)** to **property damage** to property owned by any **insured**.

   **(9)** to **property damage** to property occupied or used by any **insured** or rented to or in the care of any **insured**. This exclusion does not apply to **property damage** to such property caused by fire, smoke or explosion.

**c.** **Coverage F - Medical Payments to Others** does not apply:

   **(1)** to **bodily injury** to any person who is entitled to benefits which are provided or required to be provided under any:

      **(a)** workers compensation law;

      **(b)** nonoccupational disability law; nor

      **(c)** occupational disease law.

   **(2)** to **bodily injury** from any:

      **(a)** nuclear reaction;

      **(b)** radiation;

      **(c)** radioactive contamination; nor

      **(d)** consequence of (2)(a)-(2)(c).

   **(3)** to **bodily injury** to any **insured** or any other person, except a **residence employee**, who regularly resides on any part of any **insured premises**. This exclusion does not apply to **bodily injury** because of the operation or use of a **recreational vehicle** that is a motorized golf cart.

**3.** **ADDITIONAL COVERAGES**

In addition to **our** limit of insurance, **we** will also pay the following:

**a.** **Damage to Property of Others**

   **(1)** We will pay for **property damage** caused by any **insured** to property owned by

others. **We** will pay no more than the full cost of repair or the replacement cost at the time of the loss. In no event shall **we** pay more than $500 in any one **occurrence**.

**(2)** **We** will not pay for **property damage**:
**(a)** caused intentionally by any **insured** who has attained the age of 13.

**(b)** to property owned by any **insured** nor owned by or rented to any tenant of an **insured** or any resident of **your** household.

**(c)** to property to the extent it is covered by SECTION I - PROPERTY PROTECTION of this policy.

**(d)** arising out of:

**1)** any act or omission in connection with a premises (other than an **insured premises**) owned, rented or controlled by any **insured**;

**2)** a **business**;

**3)** ownership, maintenance or use of an **aircraft**, **motor vehicle** or **watercraft**; nor

**4)** theft or conversion of property by the **insured**.

**b. Miscellaneous Expenses**

**(1)** All costs **we** incur and all costs charged against any **insured** in the settlement of any claim or defense of any **suit**.

**(2)** Interest on damages owed by **you** because of a judgment in a **suit** **we** defend and accruing:

**(a)** after the judgment, and until **we** pay, offer or deposit in court, the amount for which **we** are liable under this policy; or

**(b)** before the judgment, where owed by law, but only on that part of the judgment **we** pay.

**(3)** Premiums on bonds required in any **suit** **we** defend. **We** will not pay the premium for any portion of a bond for an amount that is greater than **our** limit of liability. **We** have no obligation to apply for or furnish these bonds.

**(4)** Loss of earnings up to $100 a day, but not other income, when **we** ask **you** to help **us** investigate or defend any claim or **suit**.

**(5)** Any other reasonable expenses incurred at **our** request.

**c. First Aid Expenses**

Expenses for first aid to other persons at the time of the **occurrence**. **We** will pay only expenses which any **insured** incurs for treatment of **bodily injury** covered by this policy. **We** will not pay for first aid to any **insured**.

**d. Loss Assessment**

**We** will pay up to $2,500 for **your** share of any loss assessment charged against **you** as an owner or tenant of the **residence premises** by an association or corporation of property owners if the assessment is made as a result of:

**(1)** an **occurrence** or **incident** covered by SECTION II - PERSONAL LIABILITY PROTECTION of this policy; or

**(2)** liability for an act of a director, trustee or officer in his or her capacity as such. The director, trustee or officer must:

**(a)** be elected by the members of the association or corporation; and

**(b)** serve without pay for performing his or her duties.

22

We will not pay for any loss assessments charged by a governmental body.

The most **we** will pay is $2,500 regardless of the number of assessments, for loss arising out of an **occurrence**, **incident** or a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee shall be considered a single act.

## 4.  LIMIT OF INSURANCE

**We** will pay damages up to the limits stated in the Declarations as follows:

### a.  Coverage E - Personal Liability

(1)  **We** will pay damages for **bodily injury**, **property damage** and **personal injury** up to the limit stated in the Declarations under "Personal Liability." That limit is the amount of coverage and the most **we** will pay for all damages because of or arising out of:

   (a)  all **bodily injury** and all **property damage** in any one **occurrence**; and

   (b)  all **personal injury** in any one **incident**.

   In no event shall **we** pay more than the limit of insurance for all damages because of or arising out of an **occurrence** and an **incident** which result from the same set of general circumstances.

(2)  The limit of insurance is not increased because of the number of:

   (a)  **insureds**;

   (b)  persons injured;

   (c)  claims made or **suits** brought; or

   (d)  **insured premises** shown in the Declarations or premiums charged.

### b.  Coverage F - Medical Payments to Others

(1)  **We** will pay medical expenses for **bodily injury** up to the limit stated in the Declarations under "Medical Payments." However, for **bodily injury** because of the operation or use of a **recreational vehicle** that is a motorized golf cart **we** will pay no more than $500. That limit is the amount of coverage and the most **we** will pay for all medical expenses because of or arising out of **bodily injury** to any one person in any one **occurrence**.

(2)  The limit of insurance is not increased because of the number of:

   (a)  **insureds**;

   (b)  persons injured;

   (c)  claims made or **suits** brought; or

   (d)  **insured premises** shown in the Declarations or premiums charged.

## 5.  CONDITIONS

### a.  SEVERABILITY

Except as to **our** limit of insurance, the coverage provided by SECTION II - PERSONAL LIABILITY PROTECTION applies separately to each **insured** against whom claim is made or **suit** is brought.

### b.  SUIT AGAINST US

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued under Coverage E - Personal Liability until the obligation of any **insured** to pay is finally determined either by:

(1)  judgement against that person after actual trial; or

(2)  written agreement of that person, the claimant and **us**.

23

No one shall have any right to make **us** a party to a **suit** to determine the liability of any **insured**.

### c. BANKRUPTCY

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of any **insured**.

### d. OTHER INSURANCE - PERSONAL LIABILITY COVERAGE

This insurance is excess over any other valid and collectible insurance. However, if the other insurance is specifically written as excess insurance over this policy, the limits of this policy apply first.

# WHAT TO DO IN CASE OF LOSS

## 1. PROPERTY

If a covered loss occurs, the **insured** must:

a. give **us** or **our** agency immediate notice. In case of theft also notify the police and provide them with a complete inventory of stolen or damaged property. In case of loss under Credit Card, Charge Plate, Fund Transfer Card and Check Forgery Coverage, also notify the issuer of the card or plate or the bank.

b. protect the property from further damage or loss; make necessary and reasonable temporary repairs; and keep records of the cost.

c. make an inventory of all damaged and destroyed property; show in detail quantities, costs, actual cash value and amount of loss claimed; attach to the inventory all available bills, receipts and related documents that substantiate the figures in the inventory.

d. send to **us**, within 60 days after the loss, a proof of loss signed and sworn to by the **insured**, including:

   (1) the time and cause of loss;

   (2) the interest of **insureds** and all others in the property;

   (3) actual cash value and amount of loss to the property;

   (4) all encumbrances on the property;

   (5) other policies covering the loss;

   (6) changes in the title, use, occupancy or possession of the property;

   (7) if required, any plans and specifications of any damaged building or fixtures; and

   (8) the inventory of all damaged or stolen property required by 1.c. above.

e. exhibit the damaged property to **us** or **our** representative as often as may be reasonably required.

f. submit to statements and examinations under oath while not in the presence of any other **insured**, and sign the transcripts of the statements and examinations.

g. provide **us** with records and documents **we** require and permit **us** to make copies.

h. produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere and records pertaining to any loss of rental income.

i. provide evidence or affadavit(s) supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

j. make available **residence employees**, members of **your** household or others for exami-

24

nation under oath to the extent it is within **your** power to do so.

**2. PERSONAL LIABILITY PROTECTION**

In the event of **bodily injury**, **property damage** or **personal injury**, the **insured** must:

**a.** notify **us** or **our** agency as soon as possible. The notice must give:

    **(1)** **your** name and policy number;

    **(2)** the time, place and circumstances of the **occurrence** or **incident**; and

    **(3)** the names and addresses of injured persons and witnesses;

**b.** promptly send **us** any legal papers received relating to any claim or **suit**;

**c.** cooperate with **us** and assist **us** in any matter relating to a claim or **suit**; and

**d.** if a loss covered under Damage to Property of Others occurs, send **us** sworn proof of loss, within 60 days of the **occurrence**. **You**

shall also exhibit the damaged property if within **your** control.

An **insured** will not, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expenses at the time of the **occurrence** or **incident**. Expenses covered by ADDITIONAL COVERAGE, c. First Aid Expenses may be incurred by an **insured**.

**3. MEDICAL PAYMENTS**

When a claim under the Medical Payments To Others coverage is involved, the injured person or someone acting on behalf of the injured person must:

**a.** give **us**, as soon as possible, written proof of claim under oath if required;

**b.** submit to physical examinations at **our** expense by doctors **we** select, as often as **we** may reasonably require; and

**c.** authorize **us** to obtain medical and other records.

## GENERAL POLICY CONDITIONS

**1. ASSIGNMENTS**

Interest in this policy may not be transferred without **our** written consent. If **you** die, the policy will cover:

**a.** any surviving member of **your** household who was covered under this policy at the time of **your** death, but only while a resident of the **insured premises**;

**b.** **your** legal representative while acting in that capacity; and

**c.** any person having proper custody of covered property until a legal representative is appointed.

**2. CONCEALMENT OR FRAUD**

This entire policy is void if, whether before, during or after a loss, any **insured** has:

**a.** intentionally concealed or misrepresented any material fact or circumstance;

**b.** engaged in fraudulent conduct; or

**c.** made false statements;

relating to this insurance.

**3. CHANGES**

This policy and the Declarations include all the agreements between **you** and **us** or **our** agency relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by **us**. If a premium adjustment is necessary, **we** will make the adjustment as of the effective date of the change.

25

**We** may adjust **your** premium during the policy term because of changes in the factors that were used to determine such premium. These factors include but are not limited to coverages, limits of liability and deductibles, the construction, protection class and protection devices of **your** dwelling.

Premium adjustments will be made at the time of such changes or when **we** become aware of the changes, if later.

If **we** make a change which broadens coverage under this policy without additional premium charge, that change will apply to **your** insurance as of the date **we** implement the change in **your** state.

4. **INSPECTIONS**

**We** may, but are not required to, inspect **your** property and operations. **Our** inspection or resulting advice or report does not warrant that **your** property or operations are safe or healthful or comply with any laws, rules or regulations.

5. **OUR RIGHT TO RECOVER PAYMENT**

After making payment under this policy, **we** will have the right to recover to the extent of **our** payment from anyone held responsible. This right will not apply under SECTION I - PROPERTY PROTECTION if **you** have waived it in writing

prior to loss. **You** will do whatever is required to transfer this right to **us**.

This condition does not apply under SECTION II - PERSONAL LIABILITY PROTECTION to Medical Payments to Others or Damage to Property of Others.

6. **RECOVERIES**

This condition applies if **we** pay for a loss and then lost or damaged property is recovered, or payment is made by those responsible for the loss.

a. The **insured** must inform **us** or **we** must inform that **insured** if either recover property or receives payment.

b. Proper costs incurred by either party are paid first.

c. The **insured** may keep the property. If so, the amount of the claim paid or a lesser amount to which **we** agree, must be returned to **us**.

d. If the claim paid is less than the agreed loss because of a deductible or other limiting terms, the recovery is prorated between the **insured** and **us** based on the interest of each in the loss.

59325 (7-04)

## NOTICE OF PRIVACY PRACTICES

**What We Do To Protect Your Privacy**

At Auto-Owners Insurance Group*, we value your business and we want to retain your trust. In the course of providing products and services, we may obtain nonpublic personal information about you. Recently enacted laws prohibit unauthorized disclosure of nonpublic personal information. We assure you that such information is used only for the purpose of providing our products and services to you.

**Information We Obtain**

To assist in underwriting and servicing your policy, we may obtain nonpublic personal information about you. For example, we routinely obtain information through applications, forms related to our products or services, and your transactions with us. We may obtain such information from our affiliates, third parties or consumer reporting agencies. The information may include your name, address, telephone number and payment, credit and claim information. In addition, for life, health and annuity products, we may obtain your medical history with your permission. The nature and extent of the information we obtain varies based on the nature of the products and services you receive.

**Limited Disclosure**

Auto-Owners Insurance Group companies do not disclose any nonpublic personal information about their customers or former customers except as permitted by law.

**Protecting Confidentiality**

Our agents and Company associates may have access to nonpublic personal information only for the purpose of providing our products or services to you. We maintain physical, electronic and procedural safeguards against unauthorized use of your nonpublic personal information.

*Auto-Owners Insurance Group includes, Auto-Owners Insurance Company, Auto-Owners Life Insurance Company, Home-Owners Insurance Company, Owners Insurance Company, Property-Owners Insurance Company and Southern-Owners Insurance Company.